2020 PA Super 173

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| REBECCA L. JOHNSON | : | |
| | : | |
| Appellant | : | No. 2063 EDA 2018 |

Appeal from the PCRA Order Entered June 8, 2018,
in the Court of Common Pleas of Northampton County,
Criminal Division at No(s):  CP-48-CR-0000559-2013,
CP-48-CR-0002629-2012, CP-48-CR-0002774-2012.

BEFORE:  PANELLA, P.J., STABILE, J., DUBOW, J., KUNSELMAN, J.,
NICHOLS, J., MURRAY, J., McLAUGHLIN, J., KING, J., and
McCAFFERY, J.

OPINION BY KUNSELMAN, J.:                    Filed: July 23, 2020

Rebecca L. Johnson appeals from the order dismissing her first Post-Conviction Relief Act ("PCRA") petition[1] that she filed at three related trial-court docket numbers.  Johnson was convicted in October 2013 of multiple crimes, including murder of the second degree, arising from the robbery and death of her grandmother, Carrie Smith.  Following her direct appeal, Johnson filed a timely PCRA petition alleging ineffective assistance of trial counsel.  The PCRA court denied relief, and Johnson appealed.

Johnson claims that she filed three separate notices of appeal to this Court pursuant to the Supreme Court decision in **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) (holding that after June 1, 2018, separate notices of

---

[1]  42 Pa.C.S.A. §§ 9541-9546.

appeal must be filed for each lower-court docket number). However, Johnson listed all three docket numbers on each filing.

While her appeal was pending, a divided three-judge panel of this Court decided **Commonwealth v. Creese**, 216 A.3d 1142 (Pa. Super. 2019). In quashing the appeal under **Walker**, **Creese** stated, "a notice of appeal may contain only one docket number." **Creese**, 216 A.3d at 1144 (footnote omitted). Shortly thereafter, the three-judge panel that heard oral argument on Johnson's case issued a memorandum explaining that **Creese** compelled it to quash. A week later, that panel withdrew its memorandum *sua sponte*, and it requested that Johnson's case proceed before an *en banc* panel to determine whether **Creese** should control. The full Superior Court granted the panel's request. We must resolve the procedural issues first, before reaching the merits of this appeal.

I.

This Court granted *en banc* consideration of the following procedural issues:

1. Whether [Johnson's] inclusion of multiple court of common pleas docket numbers on her notice of appeal violates Pa.R.A.P. 341 and **Walker**?

2. If so, whether such violation necessitates quashal by this Court?

*Per Curiam* Order of Superior Court, 10/4/19, at 2.

First, we observe that Rebecca Johnson's use of multiple case numbers on her notices of appeal is irrelevant in light of our conclusion in

***Commonwealth v. Jerome Johnson***, ___ A.3d ___, ___, Slip Opinion at 12 (Pa. Super. 2020) (*en banc*) (partially overruling **Creese** to the extent that **Creese** interpreted **Walker** as requiring Superior Court to quash appeals when appellant files multiple notices of appeal and each notice lists all of the appealed from docket numbers). The only preliminary issue we must now decide is whether Johnson complied with **Walker** — *i.e.*, whether she actually filed separate notices of appeal for each docket number of the court of common pleas.

Counsel for Rebecca Johnson claims that she filed three separate notices of appeal, one for each lower-court docket number.[2]   Although all three notices contain the three related case numbers, counsel indicates that the clerk of courts' time stamp is in different locations on each notice and two notices are stamped 9:54 AM while one is stamped 9:56 AM.  Our review supports Johnson's claims.

The two notices with a time stamp of 9:54 AM are clearly distinct filings; one has its time stamp near counsel's signature, and the other has its time stamp at the bottom of the page.  The third notice has a completely unique time stamp of 9:56 AM.  In **Creese**, the filing clerk accepted one notice of appeal for multiple dockets, time-stamped and photocopied it, and then filed

---

[2] Counsel for Johnson states that the Clerk of Courts of Northampton County highlighted and placed a red checkmark next to one of the docket numbers on each notice for reference and filing purposes.  Additionally, counsel notes that although it is her practice to attach a copy of the docket to each individual notice, she inadvertently attached the incorrect docket to one of the notices. We find her clerical mistake inconsequential.

one copy at each docket number. Rebecca Johnson, by contrast, filed three separate notices for each lower-court docket number; as such, she complied with **Walker** and Rule 341 to perfect three appeals. Therefore, we need not quash them and proceed to the factual background and issues of her case.

II.

In January of 2012, Johnson, Roger Suero, David Bechtold, and Quadir Taylor, collaborated to rob Johnson's grandmother, Carrie Smith. Two of the conspirators broke into Ms. Smith's residence in the middle of the night, placed a pillow over her face, stole about $35,000 from a safe, and fled. Ms. Smith, who suffered from coronary artery disease, atrial fibrillation, and interstitial lung disease, had a minor heart attack during or shortly after the robbery. Approximately two months later, she died.

Based upon the autopsy results, the Commonwealth claimed Ms. Smith died from the robbery-induced heart attack. As such, it charged Johnson and her co-conspirators with murder of the second degree. A jury convicted Johnson and Suero of the felony murder[3] and related charges,[4] and the trial court sentenced Johnson to life in prison without parole.

After exhausting her direct appeal, Johnson filed a timely *pro se* PCRA petition. The court appointed counsel and held a pre-hearing conference.

---

[3] 18 Pa.C.S.A. § 2502(b).

[4] The same jury tried and convicted Suero and Johnson together. David Bechtold, a juvenile, pleaded guilty to non-homicide charges prior to Johnson and Suero's trial. Quadir Taylor, the fourth accomplice, was convicted of the felony murder and other charges after a separate jury trial.

Johnson's counsel filed an amended petition, and the court granted counsel time to review Ms. Smith's medical records. A few months later, counsel requested funds to retain medical-expert witnesses to prove that trial counsel ineffectively failed to present a viable causation defense to the felony-murder charge. Given the expense of hiring such experts, the PCRA court bifurcated the proceedings to determine, initially, whether Johnson's trial counsel had a reasonable basis for the tactics that Johnson claimed were erroneous, before it approved the funds for medical experts. Both Suero's counsel and Johnson's trial counsel testified during this initial phase of the PCRA hearings.

The court concluded Johnson's trial counsel lacked a reasonable basis for failing to pursue a causation defense on behalf of his client. **_See_** PCRA Court Opinion, 9/13/17, at 3-7.[5] Thus, the PCRA court afforded Johnson an opportunity to prove prejudice – _i.e._, that but for trial counsel's errors, there probably would have been a different outcome in her trial.

At the second phase of the bifurcated PCRA hearing, Johnson intended to call three physicians, two of whom (Drs. Edward Viner and Arnold Meshkov) had already testified on causation for her accomplices (Taylor, in his criminal trial, and Suero, in his PCRA hearing). Hence, the PCRA court asked whether it could judicially notice their prior testimony. Johnson's counsel agreed, provided she could also have a pulmonologist review Ms. Smith's medical records and the expert reports from Johnson's trial. **_See_** N.T., 10/20/17, at

---

[5] In this opinion and order, the PCRA court also denied Johnson's PCRA petition regarding her counsel's performance at the post-sentence and direct-appeal stages. Johnson did not appeal those rulings.

12. In light of Johnson's stipulation to judicial notice, the PCRA court authorized funds to retain a pulmonologist.

The second phase of Johnson's PCRA hearing convened on May 11, 2018. Dr. Wissam Abouzgheib, a board-certified pulmonologist, testified on behalf of Johnson. Afterwards, the parties briefed the PCRA court. Two weeks later, that court ruled Johnson did not prove she was prejudiced by her trial counsel's ineffectiveness and dismissed the PCRA petition as meritless. This timely appeal followed.

Johnson raises the following four issues:

> 1. Did the [PCRA] court err in finding [Johnson] failed to meet her burden of proof that she was prejudiced as a result of trial counsel's proven ineffectiveness?
>
> 2. Did the [PCRA] court err in disregarding material differences between the testimony of Dr. Wissam Abouzgheib[,] the pulmonologist who testified at Appellant's post-conviction hearing, and Dr. Arnold Meshkov (cardiologist) and Dr. Edward Viner (internal medicine) who were called by the defense as expert witnesses in co-conspirator, Quadir Taylor's, trial?
>
> 3. Did the [PCRA] court err in failing to consider each separate and distinct form of trial counsel's ineffectiveness ((a) failure to perform reasonable investigation into the issue of causation; (b) failure to consult with any medical expert; (c) failure to conduct any reasonable investigation with regard to the complex medical history of the deceased in order to make an informed decision as to the trial strategy; (d) failure to conduct any cross-examination or re-cross of the four expert witnesses called during trial by the Commonwealth; (e) and, failure to call an expert witness) and, instead, considering these actions and inactions as one conflated issue of "failure to pursue a causation defense"?

4. Did the [PCRA] court err in taking judicial notice of the conviction of Quadir Taylor, CP-48-CR-00587-2016 (Northampton County 2017), as well as the entire record and trial transcript of his case, and considering and/or evaluating the evidence presented during that other trial, and the verdict reached by that other jury, in determining whether Appellant met her burden of proof that she was prejudiced at her own trial as a result of her own trial counsel's proven ineffectiveness?

Johnson's Brief at 4-5 (footnote omitted).

All of Johnson's issues arise from the PCRA court's refusal to grant her a new trial, due to the alleged ineffectiveness of Johnson's trial counsel. Our scope of review of a PCRA court's decision is limited "to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party." **Commonwealth v. Mason**, 130 A.3d 601, 617 (Pa. 2015). "The PCRA court's credibility determinations, when supported by the record, are binding on this Court; however, we apply a *de novo* standard of review to the PCRA court's legal conclusions." **Id.**

To obtain relief on a claim of ineffectiveness of counsel, a PCRA petitioner must satisfy the performance and the prejudicial-impact test set forth in in **Strickland v. Washington**, 466 U.S. 668 (1984). The Supreme Court of Pennsylvania applies **Strickland** by requiring a petitioner to establish that: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered

prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different. **Commonwealth v. Pierce**, 527 A.2d 973, 975–76 (Pa. 1987)[6]; **see also Commonwealth v. Solano**, 129 A.3d 1156, 1162 (Pa. 2015). If a claim fails under any required element of the **Strickland**/**Pierce** test, the court may dismiss the claim on that basis. **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa. Super. 2010). Counsel is presumed to be effective, and the burden of demonstrating ineffectiveness rests on the appellant. **Id.**

We first observe that the PCRA court concluded that Johnson proved the first two prongs of the ineffectiveness test: that the claim had arguable merit and that counsel lacked a reasonable basis for failing to challenge causation. In this appeal, Johnson challenges the PCRA court's conclusion that she failed to prove prejudice. As more fully discussed below, because the PCRA court misapplied the **Strickland/Pierce** prejudice test, we address only Johnson's fourth issue and remand to allow the court below to apply the proper prejudicial-impact test in the first instance.

---

[6] The Supreme Court of Pennsylvania expressly adopted the **Strickland** prejudice standard in **Commonwealth v. Pierce**, 527 A.2d 973, 976-77 (Pa. 1987) (concluding that "the identical textual and policy considerations" in Pennsylvania precedent and **Strickland** "logically lead us to hold that together they constitute an identical rule of law in this Commonwealth").

In **Strickland**, the Supreme Court of the United States identified certain narrow categories where prejudice may be presumed: (1) where there has been an "[a]ctual or constructive denial of the assistance of counsel altogether"; (2) "when counsel is burdened by an actual conflict of interest;" or (3) when there are "various kinds of state interference with counsel's assistance." **Strickland**, 466 U.S. at 692. In these circumstances, prejudice is so likely that a case-by-case inquiry is unnecessary. **Id**. If prejudice is not presumed, the defendant must prove that counsel's errors were so serious that she was deprived of "a fair trial, a trial whose result is reliable." **Id**. at 687.

Critically, the **Strickland** Court explained how courts are to assess the prejudicial impact of prior counsel's unreasonable acts or omissions. First, the reviewing court must shift its scope of review to the perspective of the decision maker from the original prosecution. It must then look for prejudice in light of the law that controlled the prior proceeding. In **Strickland**, the High Court stated how reviewing courts and litigants should frame the prejudice issue as, "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." **Strickland**, 466 U.S. at 695.

Next, the reviewing court "must consider the totality of the evidence before the judge or jury" of the original proceeding, **id.** at 695, and ask what effect, if any, defense counsel's errors had upon the evidence that **the prior**

judge or jury reviewed. Some errors may have had no impact whatsoever on certain facts. Others "will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect." *Id.* at 695–96.

The strength of the prosecution's case from the original proceeding is a vital part of the reviewing court's inquiry. A "verdict or conclusion only weakly supported by the record is more likely to have been affected by [defense counsel's] errors than one with overwhelming record support." *Id.* at 696. Moreover, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* "[T]he court should be concerned with whether . . . the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.*

Here, however, the PCRA court did not make the correct factual findings regarding the relation between the expert testimony on causation that Johnson presented at the PCRA proceeding and *her* original prosecution. In assessing prejudice, the PCRA court "reviewed the record of the trial in this case, as well as the expert testimony offered by the defense in Quadir Taylor's trial, the cross-examination of witnesses by Taylor's counsel, and finally the testimony offered by Dr. Abouzgheib . . . ." PCRA Court Opinion, 6/8/18, at 5. It then held that, because *Taylor's* jury rejected expert testimony that Ms. Smith died of lung disease (as opposed to the robbery-induced heart

attack), there was a reasonable probability that the proposed testimony of the three experts would not have changed the outcome of Johnson's trial. This was analytical error under **Strickland/Pierce**. Whatever Taylor's jury may have thought of Dr. Abouzgheib's testimony is irrelevant to how Johnson's jury might have viewed it **along with** the testimony of Drs. Meshkov and Viner, relative to the prosecutorial evidence presented in Johnson's case.

The PCRA court should have made its own credibility determinations on Dr. Abouzgheib's testimony and the testimony of the other two physicians who, but for the failure of Johnson's trial counsel to call them, would have testified before Johnson's jury. Then, the court should have found what facts, if any, it believed from Drs. Meshkov, Viner, and Abouzgheib's testimony. Next, the PCRA court needed to reweigh the Commonwealth's evidence of guilt from Johnson's trial (not Taylor's) in light of the erroneously omitted, expert testimony on Ms. Smith's cause of death and decide what impact, if any, the absence of the three doctors' testimony had upon the evidentiary picture the Commonwealth developed in Johnson's trial.

In derogation of **Strickland/Pierce**, the PCRA court compared Dr. Abouzgheib's testimony with the testimony of the defense experts who testified at Taylor's trial. And then, as Johnson observes in her fourth issue, the PCRA court took judicial notice of the verdict from Taylor's case, a verdict that is legally irrelevant here. The court therefore did not decide whether the evidence of causation that the Commonwealth presented at Johnson's trial

was relatively weak in comparison to the testimony of the three physicians Johnson's counsel should have called. Instead, the PCRA court performed a cumulative-evidence inquiry, similar to Pennsylvania Rule of Evidence 304, and found "[w]hile some additional details regarding the process by which physicians diagnose pulmonary fibrosis was offered by Dr. Abouzgheib at [Johnson's] post-conviction hearing, the core of his testimony regarding the cause of [Ms.] Smith's death echoed that offered by Drs. Arnold Meshkov and Edward Viner during the Taylor trial." PCRA Court Opinion, 6/8/18, at 6 (citations omitted).

This inquiry was beside the point, because **no** jury heard Drs. Meshkov, Viner, and Abouzgheib testify against the Commonwealth's experts from Johnson's trial. Thus, even if Dr. Abouzgheib's testimony was repetitive of the other two physicians, this does not prove that the verdict in Johnson's trial would have probably remained guilty. It only proves that the verdict in Taylor's trial would have probably remained guilty. Hence, the PCRA court's factual findings that it made during its prejudicial-impact review miss the mark. The PCRA court therefore made factual findings that were irrelevant to this case. We must remand for the PCRA court to evaluate the factual record under the correct framework of **Strickland**, so that it may apply prejudicial-impact test in the first instance.

The Supreme Court of the United States recently explained appellate review of the **Strickland** prejudice prong in **Andrus v. Texas**, ___ U.S. ___,

___ S.Ct. ___, 2020 WL 3146872 (June 15, 2020), in relation to the role of the fact-finding court. In assessing whether a petitioner for post-conviction relief has proven a reasonable probability of prejudice – *i.e.*, that "the jury [at the petitioner's trial] would have made a different judgment . . . the reviewing court must consider the totality of the available [exculpating] evidence – both available at [the petitioner's] trial, and the evidence adduced in the *habeas* proceeding – and reweigh it against the evidence" of guilt. **Id.**, ___ U.S. at ___, Slip Opinion at 16 (some punctuation omitted).

Like the PCRA court in this matter, the Texas Court of Criminal Appeals[7] in **Andrus** failed to reweigh the evidence from the *habeas corpus* proceeding

---

[7] Under Texas' post-conviction practice, when the convicted individual is facing a death sentence, the petition for writ of *habeas corpus* is filed with the trial court, but it is returnable to the Texas Court of Criminal Appeals. **See** Tex. Code Crim. Proc. Ann., Art. 11.071 §4(a). This was the applicable procedure in Andrus' case, because the trial court had sentenced him to death. It therefore received Andrus' *habeas corpus* evidence as a special master and made recommended findings of fact and conclusions of law to the judges of the Court of Criminal Appeals.

The trial court recommended granting a new trial at the sentencing phase due to counsel's ineffectiveness, but the Court of Criminal Appeals rejected that recommendation as well as the trial court's findings of fact. Thus, when the Court of Criminal Appeals failed to reweigh the evidence from the *habeas corpus* proceeding and the previous trial in violation of **Strickland**, it failed to do so in its original (as opposed to its appellate) jurisdiction.

Unlike the Texas Court of Criminal Appeals, this Court has no original jurisdiction over PCRA matters. **See** 45 Pa.C.S.A. § 741. Hence, it would be inappropriate for us to apply the **Strickland** prejudice prong in the first instance, because it requires a fact finder to exercise its original jurisdiction to make credibility determinations and to weigh facts. Thus, we are unable to decide whether Johnson suffered prejudice from her counsel's inactions on the current record.

with the evidence that the prosecution produced at the original trial – exactly the same procedural error that the PCRA court made here. This shortcoming prohibited the Supreme Court from addressing the merits of Andrus' claim of prejudice.[8] In fact, it was "unclear whether the Court of Criminal Appeals considered *Strickland* prejudice at all." *Id.*, ___ U.S. at ___, Slip Opinion at 17.

Here, while the PCRA court acknowledged the *Strickland* prejudice prong, it disregarded that precedent's directives by comparing the prosecutorial evidence from the wrong trial to the evidence Johnson produced at her PCRA hearing. Thus, where the Supreme Court in *Andrus* could not be certain whether the Texas court had properly examined the facts of record, in Johnson's case, it is obvious that the PCRA court did not do so. We cannot perform an adequate appellate review in light of the PCRA court's analytical misstep. Given that the PCRA court "[in]adequately conducted that weighty and record-intensive analysis in the first instance, we remand for the [PCRA court] to address *Strickland* prejudice in light of the correct legal principles articulated above." *Id.*, ___ U.S. at ___, Slip Opinion at 19.

---

[8] Notably, the Texas Court of Appeals' non-application of the *Strickland* prejudice prong was so clearly erroneous that the Supreme Court of the United States granted Andrus' petition for *certiorari* and summarily vacated the order denying *habeas corpus* relief without requiring the parties to file merit briefs. *Andrus v. Texas*, ___ U.S. ___, ___ S.Ct. ___, 2020 WL 3146872, Slip Opinion at 1 (2020).

Order vacated. Case remanded for the court to address the prejudice prong of **Strickland/Pierce** in a manner consistent with this opinion. ***See id.***

Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/23/20