J-S31008-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRIS JOHNSON | : | |
| | : | |
| Appellant | : | No. 2265 EDA 2021 |

Appeal from the PCRA Order Entered October 8, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001191-2017

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                **FILED OCTOBER 19, 2022**

Chris Johnson appeals from the order that dismissed without a hearing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"). We affirm.

> The facts underlying Appellant's convictions are as follows:
>
> The victim, Marquise Matthews, sold heroin on the 2900 block of Rosehill Street in Philadelphia.  Appellant also sold heroin, just two blocks west, at C and Cambria Streets.  The blocks in the neighborhood each sold their own "brand" of heroin.  No two brands were sold on the same block.  The brand sold on Matthews's block was "Block Party."
>
> On the corner of the 2900 block of Rosehill and Cambria Streets was the Good Good Chinese store.  Both Matthews and Appellant frequented the store.  Multiple brands of heroin, including Block Party, were sold there, which was uncommon.  Typically, when competing brands were sold within the same territory, an altercation would result.

---

[*] Former Justice specially assigned to the Superior Court.

On the evening of October 11, 2016, a shootout occurred behind the store. No one was injured in the shooting; however, fourteen bags of Block Party heroin were recovered at the scene, as well as two .45-caliber and five 9-millimeter fired cartridge casings.

Five nights later, on October 16, 2016, Matthews was selling drugs with his associate, Jamil Myrick, near the middle of the 2900 block of Rosehill Street. Also with the pair was another associate known as "Poo." At approximately 12:09 a.m., Matthews and Myrick were standing outside on the steps of a home, and Poo was perched on a car across from them, when Appellant approached the group and began to fire shots at them. Myrick immediately began to run down the street, while Poo dove out of the way. Matthews also tried to dive out of the way; however, he was struck once in the head. Appellant fled the scene, running down Cambria towards C Street.

Philadelphia police officers responded to the scene upon a report of shots fired. When they arrived, they found Matthews laying on the sidewalk. The officers placed Matthews in a police wagon, and began to transport him to Temple University Hospital. However, while en route, the wagon was met by paramedics from the Philadelphia Fire Department, who pronounced Matthews dead.

Philadelphia police detectives then conducted an investigation of the shooting. During the course of the investigation, Tyera Hyman, Jamil Myrick, and Keenan Bernard positively identified Appellant as the shooter. Additionally, police recovered six .45-caliber fired cartridge casings from the scene. Ballistics confirmed that all of the casings came from the same gun, and that the same gun was also used in the October 11, 2016 shootout that occurred behind the Good Good Chinese store. A text message was recovered from Appellant's cell phone, in which he admitted to participating in a shootout on October 11, 2016.

***Commonwealth v. Johnson***, 203 A.3d 338 (Pa.Super. 2018) (unpublished memorandum at 1-2) (cleaned up), *appeal denied*, 208 A3d 62 (Pa. 2019).

Appellant was charged with murder and other crimes and elected to be tried by a jury. At trial, the Commonwealth's evidence against Appellant included the testimony of eyewitnesses Hyman, Myrick, and Bernard, the

expert ballistics testimony of Examiner Lisa Buchannan, and information from Appellant's cell phone, including text messages and web browsing history.[1] The jury convicted Appellant of first-degree murder, possession of an instrument of crime, and firearms offenses, and the trial court imposed the mandatory sentence of life imprisonment. On direct appeal, this Court affirmed Appellant's judgment of sentence and our Supreme Court denied allocatur. *See id*.

On August 5, 2020, Appellant filed a timely PCRA petition through privately-retained counsel, raising two claims of ineffective assistance of trial counsel. Pertinent to this appeal, Appellant contended that trial counsel was ineffective in his handling of the expert testimony of Examiner Buchanan. Specifically, he contended that counsel should have moved to exclude or limit the scope of the ballistics testimony pursuant to Pa.R.E. 702 and *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), because it was based upon a methodology that is no longer generally accepted in the scientific community, or pursuant to Pa.R.E. 403 because it was more prejudicial than probative. Appellant alternatively asserted that if efforts to exclude Examiner Buchanan's testimony failed, counsel should have cross-examined her about the

_____

[1] The cell phone information indicated not only that Appellant had sent a text message admitting to the October 11, 2016 shootout, but also that there was no phone activity during and around the time of Matthews's murder and that, following the murder, Appellant searched for news coverage about the shooting and who was on the list of most wanted fugitives in Philadelphia.

weaknesses in her methodology or called his own expert to explain those weaknesses. *See* PCRA Petition, 8/5/20, at 8-15.

The Commonwealth filed a motion to dismiss the petition, assailing the merits of Appellant's claims. Of note, the Commonwealth observed that Appellant had failed to offer a report from an expert who was available to testify to offer evidence beneficial to Appellant, or to establish prejudice by indicating that the jury likely would have reached a different verdict given the rest of the evidence identifying Appellant as the shooter. *See* Motion to Dismiss, 12/3/20, at 7-17.

Appellant then filed a motion to access any and all evidence reviewed by Examiner Buchanan to allow inspection by an expert witness he had retained. The PCRA court granted the motion. Appellant subsequently filed a response to the Commonwealth's motion to dismiss which presented additional argument on the *Frye* issue, but which did not include any report from his own expert. *See* Response to Motion to Dismiss, 2/26/21, at 1-3.

On August 20, 2021, the PCRA court issued notice of its intent to dismiss Appellant's petition without a hearing because his claims lacked merit. After Appellant declined to file a response, the court dismissed the petition. Appellant filed a timely notice of appeal and both Appellant and the PCRA court complied with Pa.R.A.P. 1925. Appellant presents one issue for our review:

> Did the PCRA court commit revers[i]ble error by dismissing [Appellant]'s PCRA petition without a hearing where the petition averred that trial counsel was ineffective for failing to object to the opinion testimony of the Commonwealth's firearms examiner,

whose opinions were inadmissible under Rule 702 of Pennsylvania Rules of Evidence because the methodology of a firearms examiner are no longer generally accepted in the scientific community?

Appellant's brief at 3.

We begin with a review of the applicable legal tenets. "Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." **Commonwealth v. Washington**, 269 A.3d 1255, 1262 (Pa.Super. 2022) (cleaned up). This Court "may affirm a PCRA court's decision on any grounds if the record supports it." **Commonwealth v. Dozier**, 208 A.3d 1101, 1103 (Pa.Super. 2019) (cleaned up). It is an appellant's burden to convince us both that the PCRA court erred and that relief is due. **Commonwealth v. Stansbury**, 219 A.3d 157, 161 (Pa.Super. 2019).

As Appellant's claim assails the effectiveness of his trial counsel, the following principles apply:

> [T]o establish a claim of ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. The burden is on the defendant to prove all three of the following prongs: (1) the underlying claim is of arguable merit; (2) that counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different.

***Commonwealth v. Sandusky***, 203 A.3d 1033, 1043 (Pa.Super. 2019) (cleaned up). "A failure to satisfy any prong of the ineffectiveness test requires rejection of the claim of ineffectiveness." ***Commonwealth v. Daniels***, 963 A.2d 409, 419 (Pa. 2009). Accordingly, if Appellant failed to establish any one prong of the test, we need not examine the others. *Id*. at 427.

Appellant's brief is devoted entirely to the arguable merit prong of his claim. He presents no indication that he pled and offered to prove the reasonable basis prong in the PCRA court. Appellant also neglects to squarely present an argument that he was prejudiced by trial counsel's failure to seek to exclude or undermine the Commonwealth's ballistics expert. The closest he comes is to contend that Examiner Buchanan "was a significant component of the Commonwealth's case," and that, without her testimony, the evidence of the other shooting would not have been admitted. Appellant's brief at 11. We disagree.

We observe that "[p]rejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Sandusky***, *supra* at 1044. "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." ***Commonwealth v. R. Johnson***, 236 A.3d 63, 69 (Pa.Super. 2020) (cleaned up). Consequently, in

assessing prejudice, "[t]he strength of the prosecution's case from the original proceeding is a vital part of the reviewing court's inquiry." *Id*.

The Commonwealth presents a persuasive argument against Appellant's ability to prove prejudice:

> Examiner Buchanan's testimony was only one small piece of evidence supporting [Appellant's] first-degree murder conviction, and the outcome would not have changed even without her testimony. Examiner Buchanan merely established that fired cartridge casings from the same gun were used in the two shootings at issue in this case. She did not place the gun in [Appellant]'s hand or have anything to say about who was involved in each shooting.
>
> By contrast, the Commonwealth presented testimony from **three eyewitnesses** who identified defendant as the shooter. And [Appellant]'s cell phone data contained further evidence of his guilt: he had no activity whatsoever on his phone, either incoming or outgoing, around the time of the murder. After the murder, [Appellant] searched the word "shooting" and visited several websites listing "Philadelphia's Most Wanted Fugitives." Given the totality of the evidence against him, no challenge to Examiner Buchanan's testimony would have dissuaded the jury from reaching a guilty verdict on the first-degree murder charge.

Commonwealth's brief at 19-20 (cleaned up, emphasis in original).

We agree that, given the strength of the Commonwealth's additional evidence pointing to Appellant as the shooter, it is not likely that the jury would have reached a different conclusion as to Appellant's guilt had Examiner Buchanan's testimony been excluded or her methodology questioned on cross-examination. Appellant was identified by three individuals as the person who shot Marquise Matthews and his cell phone records evinced a particular interest in efforts to locate the shooter. Moreover, even if Examiner Buchanan

had not been permitted to testify that the exact same gun used in Mr. Matthews's murder was used in the shootout the prior week, the Commonwealth had proof that .45-caliber fired cartridge casings were found at the scene of both shootings and Appellant admitted in a text message that he participated in the earlier shooting. As such, the Commonwealth had a strong case against Appellant even without Examiner Buchanan's testimony. *Cf. Commonwealth v. Hopkins*, 231 A.3d 855, 876 (Pa.Super. 2020) (holding that the defendant was prejudiced by counsel's failure to pursue a *Frye* motion where the improperly admitted expert testimony was "essential to the Commonwealth's case" because it was "[o]nly through his testimony [that] the Commonwealth [was] able to persuade the jury that [the defendant] was the murderer").

Thus, even if Appellant is correct the PCRA court wrongly held that his claim lacked arguable merit, his inability to establish that the outcome of the proceedings would have been different had trial counsel succeeded in excluding or limiting Examiner Buchanan's testimony is fatal to his claim.[2] Since Appellant has failed to satisfy his burden of establishing that the PCRA

---

[2] The PCRA court's opinion provides an analysis of both Pennsylvania law and that of other *Frye* jurisdictions that strongly supports the finding that the ballistics evidence presented at Appellant's trial was neither novel nor the product of a methodology that has ceased to be generally accepted. *See* PCRA Court Opinion, 12/10/21, at 6-9. However, Appellant's failure to establish the other prongs of his claim obviates our need to delve into the details of the scientific evidence at issue and *Frye*'s application to the methodology underpinning it.

- 8 -

court's dismissal of his petition was erroneous and that he is entitled to relief,
we affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2022