J-S27025-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES CARLTON WOODHAM | : | |
| | : | |
| Appellant | : | No. 1741 MDA 2022 |

Appeal from the PCRA Order Entered November 29, 2022
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000633-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES CARLTON WOODHAM | : | |
| | : | |
| Appellant | : | No. 1742 MDA 2022 |

Appeal from the PCRA Order Entered November 29, 2022
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000634-2019

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMES CARLTON WOODHAM | : | |
| | : | |
| Appellant | : | No. 1743 MDA 2022 |

Appeal from the PCRA Order Entered November 29, 2022
In the Court of Common Pleas of Bradford County Criminal Division at
No(s): CP-08-CR-0000636-2019

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: SEPTEMBER 21, 2023**

James Carlton Woodham appeals from the orders dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"). We affirm.

By way of background, the Commonwealth charged Appellant with various theft offenses relating to three separate incidents occurring at the Walmart in Sayre, Pennsylvania in October 2018, May 2019, and June 2019. The cases were consolidated for jury trial, at which the Commonwealth solicited testimony from Tonya Steele, an Asset Protection Specialist employed by Walmart; David Horton, an employee of the same Walmart; and Jessica Parker, alleged co-conspirator. Photographs taken from the Walmart surveillance videos showing Appellant and Parker together at the store were also admitted. Appellant testified in his own defense.

The evidence established that, with respect to the October 2018 and May 2019 incidents, Parker attempted to push a cart full of merchandise past the registers without paying for the items but was questioned by an employee and abandoned the cart. On both occasions, Appellant waited for Parker in the vestibule of the store during her theft attempt, and left with her as she walked out of the store emptyhanded. Concerning the June 2019 matter, Appellant entered the store alone, took a gallon jug of motor oil from a shelf, and then "returned" it for a refund using a receipt he found from a Walmart in Painted Post, New York.

On the morning of trial, Parker pled guilty to several offenses relating to her part in the crimes and agreed to testify against Appellant. During her

testimony, she stated on multiple occasions that Appellant used methamphetamine and that the impetus for the thefts was to exchange stolen items for drugs. She also attested that Appellant had stalked her for several years, resulting in her obtaining a protective order against him. Appellant's counsel did not object to any of these remarks. Additionally, the trial court did not provide cautionary instructions to the jury concerning the references to Appellant's drug use or alleged stalking, nor did counsel request any.

At the conclusion of the consolidated jury trial, Appellant was convicted of various theft crimes and related inchoate offenses as to all three incidents. However, the jury acquitted Appellant of retail theft under all three docket numbers. The trial court imposed an aggregate sentence of three and one-half to nine years of incarceration. Appellant filed a direct appeal in all three cases, challenging on multiple grounds both his convictions and sentences. On review, we vacated one conviction for criminal attempt to commit retail theft,[1] affirmed the remaining convictions, and remanded for resentencing since our decision upset the overall sentencing scheme. Appellant was subsequently resentenced by the trial court on one count each of criminal conspiracy to commit retail theft as to the October 2018 and May 2019

_____

[1] Appellant was convicted of both criminal attempt to commit retail theft and criminal conspiracy to commit retail theft stemming from the October 2018 incident, in violation of 18 Pa.C.S. § 906's prohibition against more than one inchoate conviction for the same crime. ***See Commonwealth v. Woodham***, 256 A.3d 7 (Pa.Super. 2021) (non-precedential decision at 6-7).

- 3 -

incidents, and one count of theft by deception relating to the June 2019 matter.

Appellant filed a *pro se* PCRA petition in all three criminal cases, alleging multiple instances of ineffective assistance of trial counsel. The PCRA court appointed counsel, who filed an amended petition on Appellant's behalf. After a hearing, the PCRA court denied the petition for lack of merit. Appellant filed a timely appeal at all three cases, which we consolidated *sua sponte*.

Both Appellant and the PCRA court complied with Pa.R.A.P. 1925. Appellant presents the following issues for our review:

I.   Whether the PCRA court's denial of Appellant's PCRA [petition] was supported by the record and/or free from legal error as it related to trial counsel's failure to preclude, object to, request protective measures and/or limiting instruction to the testimony elicited by the Commonwealth during direct, cross-examination, and on rebuttal regarding Appellant's alleged drug use and prior bad acts?

II.  Whether the PCRA court's denial of Appellant's PCRA claim that trial counsel provided ineffective assistance by failing to properly prepare for trial or conduct a reasonable investigation prior to trial is supported by the evidence and free from legal error?

Appellant's brief at 2 (cleaned up).

We begin with the legal tenets pertinent to our review. "In general, we review an order dismissing or denying a PCRA petition as to whether the findings of the PCRA court are supported by the record and are free from legal error." *Commonwealth v. Howard*, 285 A.3d 652, 657 (Pa.Super. 2022) (cleaned up). Further, "[i]t is an appellant's burden to persuade us that the

- 4 -

PCRA court erred and that relief is due." ***Commonwealth v. Thomas***, 270 A.3d 1221, 1226 (Pa.Super. 2022) (cleaned up).

Both of Appellant's issues raise ineffective assistance of trial counsel. In this vein, we observe that counsel is presumed to be effective, and the petitioner bears the burden of proving otherwise. ***See Commonwealth v. Johnson***, 236 A.3d 63, 68 (Pa.Super. 2020) (*en banc*). To do so, he must establish the following three elements:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different.

***Id***. (citation omitted). Failure to prove any of the three elements will result in denial of the ineffectiveness claim. ***Id***. Additionally, "[w]e are not required to analyze the elements of an ineffectiveness claim in any particular order." ***Commonwealth v. Montalvo***, 205 A.3d 274, 286 (Pa. 2019).

With regard to the prejudice prong, our Supreme Court has defined actual prejudice as

> [a] reasonable probability that, but for counsel's lapse, the result of the proceeding would have been different. In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Ultimately, a reviewing court must question the reliability of the proceedings and ask whether the result of the particular proceeding was unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

A reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding. Such a determination necessarily requires an assessment of the trial evidence as a whole, measured along with what is proffered on collateral attack.

***Commonwealth v. Crispell***, 193 A.3d 919, 932 (Pa. 2018) (cleaned up). "This reasonable probability test is not a stringent one, as it is less demanding than the preponderance standard." ***Commonwealth v. Little***, 246 A.3d 312, 326 (Pa.Super. 2021).

With these principles in mind, we turn to the issues raised by Appellant. He first argues that trial counsel was ineffective for failing to object to several references to drug use by both Appellant and Parker, as well as Parker's testimony that Appellant stalked her and that she had consequently obtained a protective order against him. ***See*** Appellant's brief at 17-21. He also claims that counsel's performance fell below a reasonable standard because he did not ask the trial court to provide the jury with instructions to consider any bad act evidence for a limited purpose. ***Id***. at 22.

With respect to Appellant's drug use, the following three exchanges took place in relatively rapid succession during the Commonwealth's direct examination of Parker:

Q. Okay, all right. Do you remember the – the – now how about on another occasion when there was a whole cart full of stuff?

A. Um, we were there shopping[,] and I don't know where he went to and I proceeded to go out the store and I guess he was outside waiting for me. **We were there to try to get some stuff to trade for our drugs**.

. . . .

Q. All right were there – were there – were you stuffing things in bags while you were in the store?

A. Yes, probably.

Q. Why were you doing that?

A. **To take them to exchange for drugs**.

Q. Okay and were – uh, did he know what you were doing?

A. Yeah.

Q. **Did he want some of the money or the drugs**?

A. **Yeah**.

. . . .

Q. Okay. Uh, now there's another time that a man stopped you and asked for a receipt, do you remember that day?

A. Yes.

Q. Why did you go to the Sayre Walmart that day?

A. Same reason.

Q. Did – did you go with [Appellant]?

A. Yes, sir.

Q. Did you discuss with him why you were going there?

A. Yeah.

Q. Okay. And what was – why was your reason for going there?

A. **To get stuff to trade for drugs**.

N.T. Trial, 11/15/19, at 69-72 (emphases added).

The following exchange occurred when Appellant's trial counsel questioned Parker on cross-examination:

Q. And you said you were – needed money for drugs, what kinds of drugs did you do?

A. **He did ice, methamphetamine, and I was on heroin**.

Q. For how long?

A. For eight or nine months.

Q. How often did you use?

A. Daily.

*Id*. at 78 (emphasis added).

Subsequently, during his testimony on cross-examination, Appellant refuted the accusation that he used drugs at the time of the incidents, testifying instead that he had not used drugs since 2002.[2] *See* N.T. Trial, 11/15/19, at 93-94. The Commonwealth then recalled Parker as a rebuttal witness. She once again informed the jury that Appellant used methamphetamine and that she knew this because she would do so along with him. *Id*. at 106. She also made a reference to the fact that Appellant stalked her for three years, prompting her to be afraid of him and obtain a protective order against him. *Id*. at 105.

In rejecting Appellant's claim, the PCRA court found that Appellant did not prove any of the three prongs required to demonstrate ineffective

---

[2] Appellant's trial counsel did not ask him on direct examination to refute Parker's accusations of drug use.

assistance of counsel. *See* PCRA Court Opinion, 11/28/22, at unnumbered 4-6. Of import here, the court found that Appellant suffered no prejudice, as "there was overwhelming evidence of [Appellant]'s guilt at trial." *Id*. It summarized that this included the testimony from the two Walmart employees, the video stills introduced into evidence, and the fact that Appellant's testimony in some instances contradicted the photographic evidence. *Id*. at unnumbered 4-6.

In contrast, Appellant asserts that he proved all three prongs required to meet his burden. Regarding prejudice, Appellant argues that due to counsel's inactions, the court allowed Parker's harmful testimony without implementing protective measures, and therefore the jury was free to use this evidence to infer that Appellant acted in conformance with his bad character, which is prohibited by Pa.R.E. 404(b)(1).[3] *Id*. at 23. He supports his

---

[3] This Rule states:

(b) **Other Crimes, Wrongs, or Acts**.

(1) *Prohibited Uses*. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses*. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

*(Footnote Continued Next Page)*

allegation of prejudice by citing **Commonwealth v. Satzberg**, 516 A.2d 758 (Pa.Super. 1986), for the proposition that a curative instruction, made at the end of trial for theft offenses, was not enough to cure prejudice stemming from a prosecutor's opening comment that the defendant did drugs for over two years. **Id**. at 15-16.

After careful review of the applicable law, certified record, and arguments of the parties, we discern no error with the PCRA court's conclusion that Appellant did not prove that he was prejudiced by counsel's failure to object or request curative instructions. For the reasons that follow, we find that the substantial evidence introduced against Appellant in all three matters, coupled with his inherently incredible testimony that was plainly contradicted by objective evidence, prevents us from holding that counsel's failures were "sufficient to undermine confidence in the outcome of the proceeding." **Crispell**, **supra** at 932.

Regarding the October 2018 case, Appellant was convicted of criminal conspiracy to commit retail theft. Since Appellant never placed any items in the cart or attempted to bypass the cash registers, the main issue before the jury was whether there was an agreement between Appellant and Parker as to the theft. The record demonstrates that Commonwealth introduced

. . . .

Pa.R.E. 404(b).

significant and powerful circumstantial evidence of an agreement, aside from Parker's testimony that Appellant agreed to be a lookout.

Ms. Steele testified that while monitoring Appellant and Parker on the security cameras, she began reviewing the surveillance videos and determined that Appellant and Parker walked into the store together. *See* N.T. Trial, 11/15/19, at 28. She observed Parker place items in the cart, shift them around, and cover them with a comforter. *Id*. at 20. From her review of the footage, Parker's actions were done in Appellant's presence. *Id*. Appellant and Parker remained in the store for **four** hours. *Id*. at 30. They both then spent twenty to thirty minutes meandering back and forth across the front of the store, paying particular attention to the entrance doors. *Id*. at 21. Appellant purchased a small snack at the self-checkout and proceeded to the vestibule area. *Id*. When Parker attempted to leave with the unpaid merchandise, she was stopped by Ms. Steele and abandoned the cart. *Id*. at 22. Appellant volunteered to Ms. Steele that he did not do anything wrong and then left the store right behind Parker. *Id*. Ms. Steele later determined from the security recording that they got into the same red car together and left. *Id*. at 27.

While the Commonwealth did not introduce into evidence the video that Ms. Steele described, it did enter seven photo stills from the surveillance footage, each stamped with the date and time. These included photographs of Appellant and Parker together in the store, as well as the red car they left in together.

Pertaining to the May 2019 case, Appellant was again convicted of criminal conspiracy to commit retail theft, with the primary concern for the jury being whether there was an agreement between Appellant and Parker. Akin to the matter discussed above, the Commonwealth's circumstantial evidence of an agreement between Appellant and Parker was substantial.

Mr. Horton testified that he encountered Parker attempting to push a cart past the register when it contained no bags. *See* N.T. Trial, 11/15/19, at 47. When he requested her receipt, she provided one from Lowe's Home Improvement, and then left the store without the cart after stating that her boyfriend may have the correct receipt. *Id*. at 48-49. Mr. Horton reported the matter to Ms. Steele, who reviewed the video footage. *Id*. at 50, 53. In so doing, she again noted that Appellant and Parker entered the store together, but this time had arrived in a blue or gray minivan. *Id*. at 53. They were in the store for about an hour. *Id*. at 54. Ms. Steele stated that Parker was wearing a wig when she entered the store but was not wearing it when she attempted to leave with the cart. *Id*. at 53-54. She noted that Appellant separated from Parker and entered the vestibule area about thirteen minutes before Parker attempted to bypass the registers. *Id*. at 55. The Commonwealth also introduced rebuttal testimony from Officer Vanfleet of the Athens Township Police Department, who stated that within the sporting goods section of the store, Appellant appeared to point at an item that Parker then placed into the cart. *Id*. at 102.

As with the October 2018 case, the Commonwealth introduced photographs in lieu of the video. In total, it entered eight stills, showing Appellant picking up a receipt off the ground near the store entrance, Appellant waiting in the vestibule area for Parker, and various images of Parker with and without her wig. In one image, Appellant is clearly shown standing behind Parker while she dons the wig.

Finally, as to the June 2019 case, Appellant was convicted of theft by deception based solely upon his conduct. Here, the evidence of Appellant's guilt was overwhelming.

Ms. Steele testified that she first observed Appellant in person within the store. *See* N.T. Trial, 11/15/19, at 36. She watched him take a gallon jug of oil from the shelf in the automotive section of the store and proceed toward the service desk, where exchanges are performed. *Id*. at 37. While he was waiting in line, she returned to the security office to review a recording of him entering the store, noting that he had nothing in his hands. *Id*. at 37-38. Appellant then proceeded to the customer service desk wherein he "returned" the motor oil for cash, utilizing his driver's license to effectuate the return. *Id*. at 39, 42. Ms. Steele stated that while she believed Parker was in the store at the same time, she did not observe her with Appellant on the cameras. *Id*. at 38. The Commonwealth introduced six photographs showing Appellant entering the store without anything in his hands, receiving a cash refund from the service desk, and the blue-gray van they used for transportation.

In addition to the evidence proffered against Appellant, we note that he testified in his own defense. In many instances, he did so contrary to objective photographic evidence, thereby abating his creditability. Concerning the June 2019 case, he attested that he purchased the oil in the Walmart in Painted Post, New York with his cash card. *Id*. at 83. He then told the jury that he did not want to refund the oil at the Sayre Walmart, but rather that he wanted to use it to change his own vehicle's oil. *Id*. at 93, 94. On redirect, he confusingly implied that Parker ran into the store with his container of oil, suggesting that he had to go in and retrieve it. *Id*. at 94. However, this testimony was clearly contradicted by a photograph showing him receive a cash refund, as well as Ms. Steele's personal observations that he retrieved the oil container from a shelf in the automotive section and waited in line to exchange it for cash.

Additionally, Appellant stated that as to the October 2018 case, he was waiting for Parker outside in his van, despite time-stamped photographs showing him waiting in the vestibule. *See* N.T. Trial, 11/15/19, at 80. He also claimed that he never left in a red car with Parker, and that on that date he instead arrived in a van while Parker rode with her cousin. *Id*. at 82. This testimony was refuted by Ms. Steele's review of the surveillance video showing Appellant and Parker arriving and leaving the Walmart parking lot together in a red car. Confusingly, Appellant stated that he had "no idea" why he would have been at Walmart with Parker on that occasion. *Id*. at 91. He further disputed that he was in the sporting goods section pointing to any objects

- 14 -

during the May 2019 incident, despite Officer Vanfleet's rebuttal testimony arising from the surveillance footage. While it is unclear, Appellant appears to explain his presence in the sporting goods section by indicating that he purchased a tent therefrom for Parker that day, though the surveillance videos do not show him making any purchases. *Id*. at 89.

Although we affirm the PCRA court's decision to deny relief on this claim, we do not downplay the potential prejudice arising particularly from testimony of Appellant's drug use. Our courts have historically deemed that such evidence has the potential to be prejudicial. *See*, *e.g.*, *Commonwealth v. Rivera*, 367 A.2d 719, 722 (Pa. 1976) (commenting that "evidence of drug use, like evidence of any other bad habit of a defendant, should be avoided except when relevant to an issue before the fact-finder"); *Krause v. Taylor*, 710 A.2d 1142, 1144 (Pa.Super. 1998) ("We agree that the evidence of appellant's chronic drug and alcohol abuse was highly prejudicial."); *Satzberg*, *supra* at 762 (finding that a prosecutor's statements about defendant's drug habits in a theft case prejudiced the jury against defendant, despite a cautionary instruction). Further, the lack of a limiting instruction to the jury further increased the likelihood that the jury would use the evidence of Appellant's alleged drug use and stalking behavior to convict him based upon his bad character. We also note that that, while there was only a single passing reference to Appellant's alleged stalking behavior, there were multiple references to his use of methamphetamine, including on rebuttal.

However, certain factors also decreased the prejudicial nature of Parker's remarks. First, although Appellant's trial defense as to the two conspiracy charges depended on the jury finding him credible, and the likelihood of this may have diminished due to the evidence of his drug use and stalking, any resulting harm was mitigated by his lack of credibility while on the stand. Further, the testimony that the pair intended to trade the stolen items for drugs, despite its prejudice, had substantial probative value to demonstrate the permissible Rule 404(b) purpose of motive, assuming proper procedures were followed for its introduction. Finally, Parker's fleeting testimony that she had a protective order against Appellant because of stalking, if considered by the jury at all, could just as likely have eroded her credibility as a Commonwealth witness, since she readily admitted to going to the Walmart stores with Appellant on the occasions in question despite the existence of the protective order.

In all, we cannot say that trial counsel's decision not to object to this bad act evidence "is sufficient to undermine [our] confidence in the outcome of the proceeding." **Crispell**, **supra** at 932. Nor can we conclude that it amounted to "a breakdown in the adversarial process that our system counts on to produce just results." **Id**. While it may be conceivable that the result of trial could have been different had counsel taken further steps as to this evidence, our High Court has held that "a speculative or attenuated possibility of a different outcome is insufficient to undermine confidence in the outcome." **Commonwealth v. Jones**, 210 A.3d 1014, 1019 (Pa. 2019) (citation

omitted). As Appellant has not met his burden, he is not entitled to relief as to this claim.

We now review Appellant's second issue, wherein he argues that trial counsel was ineffective for failing to perform an adequate investigation, prepare for trial, or ready Appellant to testify at trial. *See* Appellant's brief at 31-41. He highlights that trial counsel only met him twice for a total of ten minutes prior to trial, and admitted that when Appellant testified, counsel learned some new things for the first time. *Id*. Appellant notes that his attorney did not submit any evidence at trial, including any supporting the value of Appellant's bank account, bank card statements, or video footage from the Painted Post Walmart, from whence Appellant testified he purchased the oil.[4] *Id*. at 33-36. Appellant further contends that, although counsel impeached Parker with her prior theft convictions, he did so without the benefit of having her criminal history in hand. *Id*. at 36-38. He avers that prejudice stems from the fact that even if counsel had a trial strategy, it was doomed to fail based on his lack of investigation. *Id*. at 38.

In addressing these claims, the PCRA court noted that Appellant presented no evidence at the PCRA hearing that he had funds in his account at the time of the thefts or that there was any available footage from the Painted Post Walmart showing he legitimately purchased the oil in question.

---

[4] One of Appellant's defenses at trial was that he had over $5,000 in cash in his bank account during the incidents, which was offered as an explanation as to why he had no need to steal. *See* N.T. Trial, 11/15/19, at 91.

PCRA Court Opinion, 11/28/22, at unnumbered 7. As such, it found that Appellant's assertions constituted "bald allegations." *Id*. Additionally, concerning Parker's criminal history, it noted that at trial, Parker admitted she had a conviction for petit larceny in New York state, which entails retail theft, as well as several theft-related convictions based on the incidents described in the instant matter. *Id*. at 8.

We find no error with the PCRA court's decision to deny relief as to this issue. Appellant simply failed to meet his burden of proving that counsel's purported inadequate investigation prejudiced him. Concerning the failure to obtain footage from the Painted Post Walmart, we reiterate that the photographic evidence and Ms. Steele's testimony overwhelmingly demonstrated that he received a cash refund after taking oil off the shelf in the store. Accordingly, any additional investigation with respect to whether Appellant purchased oil in New York would have been fruitless. Further, Appellant did not demonstrate that any such video evidence was even available to trial counsel, if sought. Instead, he relied solely on trial testimony from Ms. Steele that at the Walmart in Sayre, Pennsylvania, they had the ability to review footage up to "x amount of months." N.T. Trial, 11/15/19, at 19. This has no bearing on whether the Painted Post Walmart had the same capabilities or how long any video would have been available.

Similarly, Appellant did not introduce any evidence at the PCRA hearing that he did, in fact, have over $5,000 in his bank account at the time of the

thefts. Without this, we are left to speculate that had trial counsel investigated this topic further, it would have led to helpful evidence.

Finally, regarding the argument that counsel failed to procure Parker's criminal history, he is not entitled to relief. As the PCRA court indicated, Parker readily admitted on cross-examination that she pled guilty to the thefts in Pennsylvania discussed *sub judice* and that she was convicted of petit larceny in New York state. *Id*. at 76. Counsel achieved his goal of impeaching her based on these *crimen falsi* convictions, and there is no support for a finding that the outcome of the trial would have been different if counsel separately proffered record of those convictions. To the extent that Appellant asserts prejudice arising because Parker denied at trial that she had convictions for solicitation of prostitution or possession of drug paraphernalia, we note again that he introduced no evidence at the PCRA hearing that she was, in fact, convicted of those crimes.

In sum, we conclude that the court did not err in denying relief as to these three cases because Appellant failed to prove sufficient prejudice arising from trial counsel's performance. Although there is no doubt that counsel allowed harmful evidence to be introduced against him at trial without objections or limiting instructions, after considering the evidence introduced by the Commonwealth and Appellant's incredible testimony in tandem, we do not find that Appellant raised a reasonable probability that the result of trial would have been different. **See Crispell**, **supra** at 932; **see also**

***Commonwealth v. Robinson***, 877 A.2d 433, 443 (Pa. 2005) (noting that

Appellant "is entitled to a fair trial, not a perfect trial").

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/21/2023