J-S31004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRYAN BROWN-CAMP | : | |
| | : | |
| Appellant | : | No. 2328 EDA 2021 |

Appeal from the PCRA Order Entered November 12, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003503-2015

BEFORE:   BOWES, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                **FILED OCTOBER 31, 2022**

Bryan Brown-Camp appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We affirm in part, vacate in part, and remand with instructions.

On April 25, 2013, Tevan Patrick was found shot to death in an abandoned property in Philadelphia.  Following an investigation, Appellant and co-defendant Maurice Smith were charged with homicide and related crimes.  They proceeded to a joint jury trial, at the conclusion of which they were both found guilty of third-degree murder and conspiracy to commit robbery.  As summarized by this Court, Appellant and Smith "lured the victim into their car to ostensibly commit a robbery, but later killed him."  ***Commonwealth v.***

---

[*] Former Justice specially assigned to the Superior Court.

***Brown-Camp***, 209 A.3d 525 (Pa.Super. 2019) (unpublished memorandum at 1-2).

Of relevance to the issues raised in this appeal, the Commonwealth's theory was that Appellant, who went by the nickname B-Y, and Smith killed Mr. Patrick between 9:30 p.m. and 10:00 p.m. on April 22, 2013. In support of this theory, the Commonwealth introduced, *inter alia*, the following evidence. Earlier in the day on April 22, 2013, Mr. Patrick asked his cousin and Appellant's girlfriend, Janeicia Jackson, for Appellant's phone number, which she provided. Later that same day, Appellant and Smith were observed driving a silver four-door Hyundai and an eyewitness observed Mr. Patrick enter a silver four-door car in Delaware. The triangulation of cell phone pings placed Appellant and Mr. Patrick near each other in Delaware and cell phone records established that they were in contact with one another. The triangulation of cell phone pings then tracked Appellant, Smith, and Mr. Patrick in southwestern Philadelphia. "All three phones were utilizing cell towers that covered the site where [Mr. Patrick's] body was recovered." PCRA Court Opinion, 1/24/22, at 10.

Reginald Tyler testified that he received a text message from Mr. Patrick on the night of April 22 saying that "if anything fishy happened to me, B-Y[1] did it." ***Brown-Camp***, ***supra*** (unpublished memorandum at 8) (cleaned up). At approximately 10:00 p.m. that evening, Mr. Patrick's cell phone went offline

---

[1] There was testimony that Appellant's nickname was B-Y.

somewhere over the Schuylkill River. Immediately prior, it had been utilizing the same cell tower as Smith's phone. After Mr. Patrick's cell phone went offline, he made no outgoing communications.

The Commonwealth also presented the testimony of Terry Kearney, who testified that Smith told him that Smith had driven his girlfriend's silver four-door car to Delaware to meet Mr. Patrick, taken him back to southwestern Philadelphia to rob him, and then shot Mr. Patrick when he attempted to run. Melissa Palmer testified that Appellant admitted to setting up Mr. Patrick to be robbed, that he picked up Mr. Patrick in Delaware, and that Mr. Patrick had been shot, but not by Appellant. Notwithstanding the Commonwealth's theory that Mr. Patrick was shot and killed on April 22, 2013, the criminal information alleged that he was killed on April 25, 2013.

On direct appeal, this Court affirmed Appellant's judgment of sentence. Notably, Appellant raised a hearsay challenge to Mr. Tyler's testimony about the text message he received from Mr. Patrick. This Court found that issue waived because trial counsel had only sought to exclude the text message testimony based on the best evidence rule. *Id*. (unpublished memorandum

at 8-11).[2]   Our Supreme Court denied Appellant's petition for allowance of appeal.  *Id*., *appeal denied*, 240 A.3d 99 (Pa. 2020).[3]

Appellant timely filed the instant, counseled PCRA petition, raising five claims of ineffective assistance of trial counsel.   He responded to the Commonwealth's ensuing motion to dismiss by filing a reply, notice of new authority, and notice of additional authority.  The PCRA court issued notice of its intent to dismiss Appellant's PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907.  On November 12, 2021, the court dismissed Appellant's petition.

This timely filed appeal followed.   Both Appellant and the PCRA court complied with Pa.R.A.P. 1925.[4]  Appellant raises the following three issues for our consideration:

---

[2]  We also found Appellant had waived the issue by failing to include it in his Rule 1925(b) statement.

[3]  In the interim, Appellant *pro se* filed a PCRA petition, which the PCRA court properly dismissed as prematurely filed while his direct appeal was still pending.  *See Commonwealth v. Smith*, 244 A.3d 13, 16 (Pa.Super. 2020) (concluding Smith's PCRA petition was prematurely filed as a petition for *allocatur* review was still pending in our Supreme Court).

[4]  Appellant filed an unprompted Rule 1925(b) statement on the same date he filed his notice of appeal.  Thereafter, the PCRA court ordered Appellant to file a Rule 1925(b) statement.  In lieu of re-filing the same statement, Appellant filed a letter to the PCRA court advising it that he had complied with the Rule 1925(b) order by virtue of his earlier filing.  Additionally, Appellant noted that the PCRA court had used the wrong docket number on its Rule 1925(b) order and final dismissal order.  We observe that the court's error has not impeded our review and we deem Appellant to have complied with the court's Rule 1925(b) order.  Thus, we mention these irregularities solely to provide a complete record of the procedural history of this case.

1. Did the PCRA court err in summarily denying the claim that trial counsel was ineffective in failing to challenge the lawfulness of the two search warrants the police used to obtain Appellant's cell phone records, as they both lacked probable cause to support their authorization?

2. Did the PCRA court err in summarily denying the claim that trial counsel was ineffective in failing to retain a forensic expert pathologist to refute the Commonwealth's theory that the decedent was murdered on April 22, 2013, as the expert opinions proffered in PCRA proceedings completely undermined the Commonwealth's theory of the case?

3. Did the PCRA court err in summarily denying the claim that trial counsel was ineffective in failing to object on hearsay and Confrontation Clause grounds to the admission of testimony about a text message from the decedent in which he identified Appellant as his killer, as this was argued by the Commonwealth for the truth of the matter asserted and no proper cautionary instruction was requested or given?

Appellant's brief at 3 (reordered for ease of disposition).

On appeal from a PCRA court's decision, our scope of review is "limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error. We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party." **Commonwealth v. Johnson**, 236 A.3d 63, 68 (Pa.Super. 2020) (*en banc*) (cleaned up). The PCRA court's credibility determinations are binding on this Court when supported by the certified record, but we review its legal conclusions *de novo*. **Id**.

Appellant challenges the effective assistance of trial counsel. Preliminarily, we observe that counsel is presumed to be effective and the

petitioner bears the burden of proving otherwise. *Id*. (citation omitted). To do so, he must establish the following three elements:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different.

*Id*. (citations omitted). Failure to prove any of the three elements will result in dismissal of the ineffectiveness claim. *Id*. (citation omitted).

Appellant first argues that the PCRA court erred in summarily dismissing his claim that trial counsel rendered ineffective assistance by failing to challenge the two search warrants for Appellant's cell phone records. *See* Appellant's brief at 35. We consider this issue mindful of the following:

> This Court has previously found that the failure to file a suppression motion under some circumstances may be evidence of ineffective assistance of counsel. However, if the grounds underpinning that motion are without merit, counsel will not be deemed ineffective for failing to so move. The defendant must establish that there was no reasonable basis for not pursuing the suppression claim and that if the evidence had been suppressed, there is a reasonable probability the verdict would have been more favorable.

*Commonwealth v. Watley*, 153 A.3d 1034, 1044 (Pa.Super. 2016) (cleaned up).

Regarding the grounds upon which Appellant relies in arguing that counsel should have sought suppression, our Supreme Court has summarized as follows:

> Pursuant to the totality of the circumstances test . . ., the task of an issuing authority is simply to make a practical, common-sense

decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

***Commonwealth v. Torres***, 764 A.2d 532, 537 (Pa. 2001) (cleaned up).

By way of background, nearly identical affidavits of probable cause were issued for Appellant's two cell phone accounts. The affidavits offered the following averments in support thereof. Mr. Patrick's body was discovered at 6513 Linmore Avenue, in Philadelphia, on April 25, 2013. The ensuing investigation revealed the cause of death to be multiple gunshot wounds and the manner of death to be homicide. Mr. Patrick was last heard from on April 22, 2013. He was reported missing from the state of Delaware on April 24, 2013. Ms. Jackson (identified as "Witness #1" in the affidavits) stated that on April 22, 2013, Mr. Patrick asked her for Appellant's phone number, which she provided. Later that evening, she picked up Appellant near the Philadelphia Zoo. Once inside Ms. Jackson's car, Appellant instructed her to call Mr. Patrick, which she attempted to do three times. Ms. Jackson further stated that Appellant was known as B.Y. and he lived in Philadelphia. ***See*** PCRA Petition, 12/28/20, Exhibits L-M.

In his PCRA petition, Appellant contended that these affidavits failed to establish probable cause and trial counsel was therefore ineffective for not challenging them. The PCRA court, however, concluded that counsel had a reasonable basis for not filing a motion to suppress the phone records. Specifically, the PCRA court provided the following reasoning:

> This was a case where the [victim] was reported missing as of the date that the [victim] was looking to make contact with [Appellant]. [Appellant] attempted to call the [victim] three times on that same night when he disappeared, and [Appellant] was picked up within a few miles of where the [victim's] body was found three (3) days after the date he went missing. Viewing the information in the affidavit in a common sense manner would lead one to surmise that there is a probability that there would be information of evidence of a crime on [Appellant's] phone.

PCRA Court Opinion, 1/24/22, at 14.

According to Appellant, the detective authoring the affidavit knowingly omitted that Appellant and Mr. Patrick were good friends who sold marijuana together and that Appellant's phone charge was depleted when he asked Ms. Jackson to call Mr. Patrick. *See* Appellant's brief at 37. Appellant avers that these omissions created the false impression that Appellant and Mr. Patrick were strangers and that Appellant asked Ms. Jackson to call Mr. Patrick to conceal Appellant's involvement in his death. *Id*. Appellant concedes that his communication with Mr. Patrick on April 22 would suggest that he "may have had useful information about [Mr.] Patrick's whereabouts" and therefore the "[p]olice were therefore well within their rights to seek Appellant out and ask him questions[.]" *Id*. at 38. However, Appellant argues that "there is nothing in the four corners of these two warrants that says **anything** about Appellant's possible involvement in [Mr.] Patrick's death, much less establishes probable cause to believe he committed this crime." *Id*. (emphasis in original).

Appellant fails to cite authority to support his notion that the affidavit of probable cause becomes somehow invalid by the omission of arguably-

exculpatory evidence. Critically, the police did not have to establish probable cause that Appellant had committed a crime to obtain a search warrant for his phone records. Rather, they needed to establish a fair probability that evidence of a crime would be found in a particular place, *i.e.*, his phone records. Upon review of the affidavits of probable cause, we conclude that there was a fair probability that evidence of the crimes surrounding Mr. Patrick's disappearance would be found in Appellant's phone records. Thus, any motion to suppress based on a lack of probable cause would have been meritless. Accordingly, the PCRA court's conclusion that counsel had a reasonable basis not to file a suppression motion is supported by the record and the court did not err in dismissing this claim.

We now turn to Appellant's second issue on appeal. Appellant argues that the PCRA court erred in summarily dismissing his claim that trial counsel rendered ineffective assistance by failing to retain an expert witness to refute the Commonwealth's theory that Mr. Patrick was murdered on April 22, 2013. *See* Appellant's brief at 9. To prove a PCRA claim for failure to call an expert witness, a petitioner must:

> prove that an expert witness was willing and available to testify on the subject of the testimony at trial, counsel knew or should have known about the witness and the defendant was prejudiced by the absence of the testimony. Prejudice in this respect requires the petitioner to show how the uncalled witnesses' testimony would have been beneficial under the circumstances of the case. Therefore, the petitioner's burden is to show that testimony provided by the uncalled witness would have been helpful to the defense.

***Commonwealth v. Williams***, 141 A.3d 440, 460 (Pa. 2016) (cleaned up).

In his PCRA petition, Appellant identified Dr. Gary Collins as a potential expert witness whom trial counsel should have known about and called at trial to refute the Commonwealth's theory regarding Mr. Patrick's date of death. Dr. Collins conducted Mr. Patrick's autopsy, rendered the opinion as to the cause and manner of death, and issued the autopsy report.[5]  Appellant's petition included a new report authored by Dr. Collins wherein he concluded that, based on the forensic evidence, it was "highly unlikely" that Mr. Patrick was shot and killed on April 22, 2013, and opined instead that his time of death was sometime between 5:00 p.m. on April 24 and 5:00 a.m. on April 25, 2013.  PCRA Petition, 12/28/20, Exhibit K at 4-5.  Additionally, Dr. Collins opined that "[t]he two penetrating gunshot wounds to [Mr. Patrick's] head would have been immediately incapacitating" and thus it was "not possible that Mr. Patrick would have been shot on April 22, 2013[,] and survived his injuries until April 25, 2013." ***Id***., Exhibit K at 5.

The PCRA court found Appellant had successfully established an expert witness was willing to testify and that counsel should have known about the witness.  Nonetheless, the court dismissed the claim without a hearing because it found Appellant could not prove prejudice when "the evidence that the victim was murdered sometime on April 22, 2013, was established through

---

[5]  Dr. Collins did not testify at trial because he was no longer employed in the medical examiner's office in Philadelphia at that time.

overwhelming direct and circumstantial evidence."[6]  PCRA Court Opinion, 1/24/22, at 9.  The PCRA court made this credibility determination, *i.e.*, that the evidence presented at trial was more persuasive than Dr. Collins's proposed testimony, without the benefit of an evidentiary hearing.  For the following reasons, we conclude this was error.

Upon review of the record, it is beyond cavil that Dr. Collins's testimony regarding Mr. Patrick's date of death would have been helpful to the defense.  Specifically, it would have altered the significance of the April 22 cell phone evidence and provided the opportunity for Appellant to present a potential alibi defense for the actual date of the murder.  This paradigm shift in focus on when Mr. Patrick was killed and the evidence of who he was with at the time of his death could have cast reasonable doubt in the mind of at least one

---

[6]  We observe that the Commonwealth avers that Appellant cannot establish prejudice because Appellant's trial counsel cross-examined Dr. Albert Chu regarding the "core substance of Dr. Collins's proposed testimony" and argued in closing that Mr. Patrick could not have been killed on April 22.  **See** Commonwealth's brief at 15.  In fact, trial counsel did not cross-examine Dr. Chu at all; it was Smith's attorney who cross-examined him.  **See** N.T. Trial (Jury) Vol. I, 2/23/17, at 110-15 (cross-examination by Smith's attorney); **id**. at 115 (Appellant's attorney stating that he had "no questions" for Dr. Chu).  The brief cross-examination by Smith's counsel focused on the onset of rigor mortis generally, elicited that it generally lasts 48 hours, and that Mr. Patrick's muscles exhibited "rigidity" during his autopsy on April 26. **Id**. at 110-15.  It did not attempt to elicit the opinion that, based upon the forensic evidence of when rigor mortis was observed in Mr. Patrick and the lack of decomposition evidence at the time of his autopsy, Mr. Patrick was not killed on April 22, but instead was killed sometime between April 24 and 25. As such, counsel's closing argument was that based on rigor mortis being present when Mr. Patrick's body was found, he was killed on April 23, not April 22. **See** N.T. Trial (Jury) Vol. I, 2/28/17, at 104-05.

juror, thereby affecting the verdict in this case. At trial, counsel argued that, based upon an examination of Dr. Chu's testimony and the forensic evidence, Mr. Patrick was killed on April 23, not April 22. However, Dr. Collins's report indicates that he was willing and able to testify that, in his medical opinion, the date of death was April 24 or April 25, which was even further removed from the evidence placing Appellant in Mr. Patrick's vicinity. This would have significantly strengthened the defense's argument that the Commonwealth's evidence failed to prove beyond a reasonable doubt that Appellant was involved in Mr. Patrick's death.

Appellant was entitled to an evidentiary hearing wherein the PCRA court would make a credibility determination as to Dr. Collins's testimony and then "reweigh the Commonwealth's evidence of guilt from [Appellant's] trial . . . and decide what impact, if any, the absence of [Dr. Collins's] testimony had upon the evidentiary picture the Commonwealth developed in [Appellant's] trial." **Johnson**, **supra** at 70. Accordingly, we vacate the order insofar as it dismissed this claim and remand for an evidentiary hearing on trial counsel's alleged ineffectiveness for failing to call Dr. Collins as an expert witness regarding Mr. Patrick's time of death.

Finally, we turn to Appellant's third issue regarding the admission of Mr. Tyler's testimony about the text message he received from Mr. Patrick. Specifically, he argues that the PCRA court erred in summarily dismissing his claim that trial counsel provided ineffective assistance by failing to object to

the admission of this testimony on hearsay grounds.[7]  **See** Appellant's brief at 43.  As discussed *supra*, trial counsel had advocated for exclusion of that testimony solely based on the best evidence rule, thereby waiving for appellate purposes any argument based upon hearsay.

By way of background, there were two similar text messages allegedly sent by Mr. Patrick on the evening of April 22.  The first was allegedly sent to Mr. Tyler, and it stated that "if anything fishy happened to me, B-Y did it." N.T. Trial (Jury) Vol. I, 2/23/17, at 7.  Mr. Tyler subsequently deleted the message and it was never seen by police.  Instead, he relayed the contents of the text message as he remembered them to the police during an interview. Secondly, the Commonwealth sought to introduce a screenshot of a text exchange between Mr. Patrick and an unknown individual that was sent to Mr. Patrick's mother, stating that "if some fishy shit happen, I was wit [*sic*] B-Y."  **Id**.  The court excluded the screenshot but permitted Mr. Tyler to testify from memory as to the message he received from Mr. Patrick on the evening of April 22.  **Id**. at 14-15.  Mr. Tyler testified at trial that he received a text message from Mr. Patrick on the night of April 22 that said:  "if anything fishy happened to me, B-Y did it."  N.T. Trial (Jury) Vol. I, 2/23/17, at 158.

_____

[7] Appellant also argues that counsel was ineffective for failing to object to its admission on the grounds that it violated the Confrontation Clause.  Although Appellant's argument for this issue spans thirteen pages, his argument pertaining to the Confrontation Clause comprises merely two paragraphs.  **See** Appellant's brief at 51, 54.  Regardless, given our ruling on counsel's failure to object on hearsay grounds, we need not reach Appellant's Confrontation Clause argument, scant as it is.

Appellant argued in his PCRA petition that this testimony was inadmissible hearsay that constituted a statement of belief offered for the truth of the matter asserted, and therefore did not fall under any exception. As such, he contends that counsel rendered ineffective assistance by failing to object to its admission on hearsay grounds or request a cautionary instruction. *See* PCRA Petition, 12/28/20, at 56-61.

In dismissing this claim, the PCRA court concluded that Appellant successfully established that the issue was of arguable merit and that counsel had no reasonable basis for failing to object on hearsay grounds. *See* PCRA Court Opinion, 1/24/22, at 15. Nonetheless, the PCRA court dismissed this claim because it found that Appellant had not suffered prejudice. Specifically, the court explained that it would have overruled any hearsay objection because the "statement was offered as circumstantial evidence to prove [Mr. Patrick's] subsequent conduct; that he was with [Appellant] when he went missing." *Id*. at 16. The PCRA court additionally noted that even if such a ruling would have been in error, Appellant could not prove prejudice given the overwhelming evidence of his guilt. *Id*. at 17.

Appellant argues that even if the text message was admissible to show Mr. Patrick's intent to be in Appellant's company, "it also pointed the finger of guilt at Appellant, an impermissible purpose for the evidence." Appellant's brief at 58. According to Appellant, the fact that Appellant and Smith were in the company of Mr. Patrick on the evening of April 22 was undisputed given

the cell phone evidence, and therefore any probative value "did not outweigh the high potential for incurable prejudice." ***Id***. at 58 (cleaned up). By extension, Appellant maintains that the PCRA court's conclusion that a hearsay objection would not have been valid is legally erroneous.

In support of this argument, Appellant relies on our Supreme Court's decision in ***Commonwealth v. Fitzpatrick***, 255 A.3d 452 (Pa. 2021), which was issued during the PCRA proceedings below. In ***Fitzpatrick***, our Supreme Court considered "[t]he admissibility of state of mind statements, including dual-purpose statements that proverbially point the finger from the grave[.]" ***Id***. at 473. There are three "categories in which the need for such statements overcomes almost any possible prejudice[:]" (1) a defendant raises the defense of justification; (2) the defendant raises the defense that the deceased committed suicide; and (3) claims of accidental death. ***Id***. at 474-75 (cleaned up). Recognizing that our courts' approaches to the admissibility of these statements has been inconsistent, our High Court "set forth the general inquiry courts must undertake when contemplating the admissibility of out-of-court statements proffered to the court for admission as state of mind evidence" as follows:

> First, the court must ascertain the reason that the moving party is offering the evidence. If it is not being offered for the truth of the matter asserted, it is not hearsay, and can be admitted to demonstrate the non-truth purpose. . . .
>
> If the statement is offered as substantive evidence for the truth of the matter asserted, the court must examine the statement more closely and make a number of preliminary rulings. First, [as

with] all evidence, the statement must be relevant. In the context of state of mind evidence, the speaker's mindset must be pertinent to some contested issue in the legal proceeding. In criminal cases, the prosecution must prove the defendant's *mens rea* beyond a reasonable doubt. Thus, in the typical prosecution, a victim's state of mind simply is not relevant. There are exceptions to this general rule, [as outlined hereinabove]. . . .

. . . .

If the statement is relevant, then the court must examine the character of the statement being proffered. If the statement is a sing[le] expression of the declarant's state of mind, *i.e.*, "I was sad," the court need only apply Rule 803(3). So long as the expression refers to the declarant's state of mind (or physical condition), and not to a third-party's state of mind, and so long as the statement refers to the speaker's mindset as it existed at the time the statement was made, facially it is admissible. . . .

On the other hand, if the statement is not a sing[le] purpose statement, but instead contains both a state of mind component and a "fact-bound" component, it generally is inadmissible. . . .

[S]uch two-part statements are only relevant if they are taken for their truth. The problem is that there are two parts to these statements, only one of which facially is admissible: the state of mind component. The factual component is not. That part, which is uttered out-of-court and also offered for the truth of the matter asserted, does not satisfy this exception to the hearsay rule, nor does it possess the same hallmarks of reliability imputed to state of mind evidence. That one aspect of a statement is admissible does not render all of a multi-part statement admissible. Quite to the contrary, both components must independently be admissible. Each aspect of the statement must satisfy a hearsay exception.

*Fitzpatrick*, *supra* at 479-81 (cleaned up).

In *Fitzpatrick*, the victim, Annemarie Fitzpatrick, had written a note that stated "06/05/12. If something happens to me—JOE." *Id*. at 460. Her husband's name was Joseph Fitzpatrick, the defendant in the case. On June 6, 2012, she was found dead following a purported ATV accident. The High Court

found the note relevant because Fitzpatrick disputed that his wife was murdered, claiming instead that she died in an accident. *Id*. at 482. Applying the above, the Court found "the fact-bound aspect of [her] note cannot be bootstrapped into admissibility merely because the statement contemporaneously contains some expression of [her] state of mind." *Id*. (cleaned up). Accordingly, it found that the trial court erred in admitting the note at trial.

Instantly, the PCRA court distinguishes *Fitzpatrick* because it claims that the text message "was not offered to prove the truth of the matter asserted—that B-Y did something fishy—but that the [victim] was with B-Y around the time he went missing." PCRA Court Opinion, 1/24/22, at 17. At the outset, we observe that the PCRA court misses the mark by focusing on the "fishy" aspect of the message, and not the latter portion pertaining to Appellant. Furthermore, it appears that the PCRA court has conflated the two messages purportedly sent by Mr. Patrick. By characterizing the text message as showing Mr. Patrick's intent to be with Appellant on April 22, 2013, the PCRA court must be referring to the screenshot message, sent to Mr. Patrick's mother, that stated if anything fishy happened, Mr. Patrick was "wit [*sic*] B-Y." In fact, the message to which Mr. Tyler testified stated that if anything fishy happened, "B-Y did it." Without doubt, this text message was offered for the truth of the matter asserted and pointed the finger at Appellant from the grave. Even if it also demonstrated Mr. Patrick's state of mind, given that

there was no question of justification, suicide, or accident, the message would not be relevant solely on the basis of Mr. Patrick's state of mind. Moreover, even assuming that the message was relevant, the fact-bound aspect of it that pointed the finger at Appellant if anything untoward happened to Mr. Patrick rendered the text message as a whole inadmissible.

As such, the PCRA court's conclusion that Appellant was not prejudiced is based on a legally erroneous analysis. Accordingly, we vacate this portion of the PCRA court's order and remand for a hearing. At the hearing, trial counsel should be afforded the opportunity to be heard as to whether he had a reasonable basis for failing to object on hearsay grounds. **_See Commonwealth v. Hughes_**, 865 A.2d 761, 799 (Pa. 2004) ("[A]s the PCRA court did not hold a hearing, we cannot discern whether a reasonable basis existed for counsel's omission. In such circumstance, this Court has declined to divine, in the first instance on appellate review, whether counsel's actions were reasonably based."). Following the hearing, the PCRA court must determine whether the basis counsel offers for failing to object is reasonable and whether the erroneously-admitted evidence likely affected the verdict.

Based on the foregoing, we: (1) affirm the portion of the PCRA court's order dismissing Appellant's suppression-related ineffective assistance claim; (2) vacate the portion of the PCRA court's order dismissing Appellant's claim of ineffectiveness relating to the expert witness testimony claim and remand for an evidentiary hearing on the prejudice prong; and (3) vacate the portion

- 18 -

of the PCRA court's order denying relief for counsel's failure to object to the text message on hearsay grounds and remand for an evidentiary hearing on the reasonable basis and prejudice prongs.

Order affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judge Nichols and P.J.E. Stevens concur in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/31/2022