J-S09024-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAUN ROSARIO | : | |
| | : | |
| Appellant | : | No. 602 WDA 2022 |

Appeal from the PCRA Order Entered May 4, 2022
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0001818-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAUN DENNIS ROSARIO | : | |
| | : | |
| Appellant | : | No. 603 WDA 2022 |

Appeal from the PCRA Order Entered May 4, 2022
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0001227-2011

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SHAUN DENNIS ROSARIO | : | |
| | : | |
| Appellant | : | No. 604 WDA 2022 |

Appeal from the PCRA Order Entered May 4, 2022
In the Court of Common Pleas of Washington County Criminal Division at
No(s):  CP-63-CR-0001821-2011

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: June 28, 2023**

Shaun Dennis Rosario appeals *pro se* from the May 4, 2022 order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"). We vacate the PCRA court's order and remand for further proceedings consistent with this memorandum.

By way of background, Appellant was charged at the above-referenced docket numbers due to three incidents occurring between May 9 and 10, 2011. Appellant was charged at docket number 1818-2011 ("Theft Docket") with multiple theft and summary offenses based upon Appellant allegedly entering another individual's dump truck and stealing a hammer on May 9, 2011.

Later that morning, Appellant was found unresponsive from a drug overdose with the hammer beneath his prone body. Appellant was transported to Mon Valley Hospital for treatment. Upon awakening in the hospital, Appellant became irate and combative. Appellant's ensuing conduct was previously summarized as follows:

> When he regained consciousness, Appellant expressed his desire to be released from the hospital. The treating physician, Dr. Gene Manzetti, M.D., explained to Appellant the necessity that Appellant remain under the care of the hospital. Appellant became upset at that news and insisted that he had the right to leave. At this juncture, Dr. Manzetti informed Appellant that there was a warrant out for his arrest and when he was discharged from medical care the police would have to be informed regarding the warrant.
>
> Testimony demonstrated that upon hearing this information Appellant became irate and began yelling at Dr. Manzetti. However, Appellant ultimately decided to stay at the hospital overnight. [At a]pproximately 1:15 a.m. on May 10, 2011,

Appellant became agitated and demanded information about his treatment. [Stacy Hoffman, R.N.,] provided him with the results of his toxicology screen. Appellant read over the report and then queried whether there was anyone in the building with weapons. Appellant then began to stand up with the aid of Ms. Hoffman and nursing assistant Carol May. Nurse Hoffman testified that Appellant then suddenly pushed past them and slammed the door shut, trapping everyone inside. Appellant expressed that he was not going to go to jail and no one was leaving the room until he could go home.

Security was called to the area. Appellant blockaded the door with his body and pulled out his IV and catheter. As a result, blood began pouring out of the IV and Appellant began deliberately spraying it all over the room. Testimony demonstrated that Appellant, who had previously been diagnosed with hepatitis C, spilled blood onto Ms. Hoffman. Appellant then demanded Ms. Hoffman remove the catheter. Appellant permitted another nurse to retrieve a needleless syringe, which was necessary for the removal, and provide it to Ms. Hoffman. After the catheter was removed, two security guards, Edward Swick and Robert Ashbaugh, arrived and attempted to make entry to the room, but Appellant continued to block the door with his body.

Appellant picked up the syringe and began waving it around and threatening Ms. Hoffman, Ms. May and the security guards stating he would stab them. Appellant then attempted to grab a chair at which time he took some of his weight off of the door and security was able to make entry into the room. Appellant then grabbed Ms. May and put her in front of him to block himself from security. He then lifted Ms. May off of the ground. While Ms. May was still in his grasp, the security guards grabbed Appellant and put him onto the bed. He continued threatening that he was going to stab everyone and making motions to that effect. Testimony demonstrated that he swung at the upper body and neck areas of the security guards and nurses numerous times with the syringe. Ms. May was finally freed from Appellant's grasp and she and Ms. Hoffman were able to exit the room. Appellant finally was subdued on the hospital bed, but not before he suddenly lunged up at the security guards and grabbed their shirts and attempted to take pens from the front pockets of their shirts.

*Commonwealth v. Rosario* ("*Rosario I*"), 136 A.3d 1028 (Pa.Super. 2016) (unpublished memorandum at 2-4) (cleaned up). As a result, Appellant was charged at docket number 1821-2011 ("Hospital Docket"), with numerous assault-related crimes for his actions against the nurses and security guards.

Shortly thereafter, Appellant was discharged by the hospital, transferred to the custody of the police, and handcuffed and shackled. Constable Walter Fronzaglio placed Appellant in the rear of a van for transport to the Washington County Correctional Facility. The van did not have a partition between the driver and the rear passengers, but Appellant's leg shackles were secured to the frame of his seat. While initially calm and conversive with Constable Fronzaglio, Appellant, seemingly unprovoked, once again became combative:

> Appellant began screaming "I want out of this fucking van. I'm getting the fuck out of here. I want to be free." Constable Fronzaglio testified that Appellant then jumped on him while he was driving and reached for his gun on his right hip. Constable Fronzaglio was carrying a .40 caliber pistol in a leather snap holster. In response, Constable Fronzaglio let go of the steering wheel and grabbed Appellant's hand that was on his gun. Constable Fronzaglio also grabbed Appellant's head and tried to pull him away from his person. During the struggle the van veered off the road and flipped over.
>
> The van landed upside down on an embankment. Constable Fronzaglio testified he could not see anything and was disoriented. He believed he was lying on the roof of the van and was still struggling with Appellant. Appellant then tried to crawl out of the van. Constable Fronzaglio began punching him in the head and yelled for Appellant to get back into the van. Constable Fronzaglio was able to free himself and crawl out of an opening near the passenger side window and exited the van. Appellant was still trapped in the van.

- 4 -

Upon noticing Constable Fronzaglio waving his arms on the side of the road, a truck driver, Lawrence Prenni, called 9-1-1 and pulled over to see if he could be of assistance. Constable Fronzaglio asked Mr. Prenni to assist him in pulling Appellant out of the van. As the Constable was pulling Appellant from the wreckage, Appellant stabbed Constable Fronzaglio in the calf with a knife. Mr. Prenni grabbed the knife from Appellant and threw it. Mr. Prenni subdued Appellant until the Pennsylvania State Police ["PSP"] arrived.

The [PSP] arrived at the scene and were able to pull Appellant from the van. Constable Fronzaglio testified that he had articles from other prisoners in his van that he holds in safe keeping until offenders retrieve them, as such articles are not permitted to go into the jail. He testified he had a knife in the van from such an instance. Appellant was searched at the scene by the [PSP] and they discovered Appellant had one of the Constable's spare .40 caliber magazines in his pocket.

Constable Fronzaglio was taken to the hospital by the Donora Police. At Mon Valley Hospital he was treated for a stab wound to the right calf and bumps and bruises sustained during the crash. Appellant was taken into custody.

*Id*. (unpublished memorandum at 4-6) (cleaned up). Based upon the foregoing, Appellant was charged at docket number 1227-2011 ("Escape Docket") with several assaultive and escape-related crimes.

While being transported to his preliminary hearing by PSP, the troopers told Appellant that they did not want any problems on the return trip to the Washington County Correctional Facility. Appellant, referencing the manner in which he was secured inside the PSP vehicle, replied, "If I was locked up like this in the first place, none of this would have happened[.]" *Id*. (unpublished memorandum at 6) (cleaned up).

In 2013, Appellant proceeded to a consolidated jury trial on all three dockets.[1] Appellant was acquitted of all charges at the Theft Docket. At the Hospital Docket, the jury convicted Appellant of two counts each of terroristic threats, false imprisonment, and unlawful restraint, and four counts of simple assault. The jury convicted Appellant at the Escape Docket with two counts each of aggravated assault and simple assault, and one count each of assault by prisoner, disarming law enforcement officer, and criminal attempt (escape with a deadly weapon).[2] The trial court sentenced Appellant to a total aggregate sentence of seventeen to thirty-four years of incarceration.

Appellant filed a post-sentence motion, which the trial court denied. On direct appeal to this Court, Appellant challenged the effective assistance of counsel, the constitutionality of the sentencing guidelines, the discretionary aspects of his sentence, and the calculation of Appellant's credit for time served. We dismissed Appellant's ineffective-assistance-of-counsel claim without prejudice to raise it in a collateral proceeding, deemed the underdeveloped guidelines issue waived, and affirmed Appellant's judgment of sentence. *See Rosario I*, *supra*.

_____

[1] Appellant was appointed several different attorneys to represent him pre-trial, all of whom sought to withdraw due to various conflicts. Of relevance to the instant appeal, John Puskar, Esquire, was appointed to represent Appellant on April 11, 2013. Subsequently, Thomas Agrafiotis, Esquire, was appointed to represent Appellant. Attorney Agrafiotis represented Appellant at trial and on appeal. However, as Appellant wished to challenge counsel's effectiveness on direct appeal, Appellant was appointed new counsel, Renee Colbert, for appeal purposes.

[2] He was found not guilty of one charge of aggravated assault.

Thereafter, Appellant initiated the instant PCRA proceedings by timely filing *pro se* his first PCRA petition. Therein, he raised several claims of ineffective assistance of counsel, trial court error, and constitutional violations. The PCRA court ultimately appointed Molly Maguire Gaussa, Esquire, who filed a no-merit letter and sought leave to withdraw pursuant to **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988), and **Commonwealth v. Finley**, 550 A.2d 213 (Pa.Super. 1988) (*en banc*). The PCRA court granted Attorney Gaussa's petition to withdraw and issued notice pursuant to Pa.R.Crim.P. 907 of its intent to dismiss Appellant's PCRA petition without a hearing. On June 25, 2019, Appellant filed a response challenging the assistance of Attorney Gaussa, and the PCRA court entered an order dismissing the petition. Appellant did not receive a copy of the dismissal order. Nearly a year later, Appellant *pro se* sought an extension of time to file a notice of appeal, which the PCRA court denied.

On October 29, 2020, Appellant filed a single notice of appeal at all three docket numbers, challenging the dismissal of his PCRA petition. The PCRA court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed a statement raising fourteen challenges. The PCRA court, in its responsive Rule 1925(a) opinion, found the appeal to be untimely and Appellant's claims waived because he incorporated by reference other filings into his Rule 1925(b) statement. In the alternative, the court addressed the merits of the claims and determined that they were all either waived for failure to raise in the PCRA court or lacked

- 7 -

merit. This Court, before reaching the merits of Appellant's claims, quashed the appeal as premature because we found there was no final, appealable order entered on the docket. *See Commonwealth v. Rosario* ("*Rosario II*"), 276 A.3d 245 (Pa.Super. 2022) (non-precedential decision at 5). We directed that once the clerk of courts served the order dismissing Appellant's petition, Appellant would have thirty days to file separate notices of appeal at each docket. *See id*.

The clerk of courts noted service of the dismissal order on Appellant on May 4, 2022. These timely-filed notices of appeal followed.[3] The PCRA court did not order a supplemental Rule 1925(b) statement and Appellant did not file one. The PCRA court nonetheless filed a supplemental Rule 1925(a) opinion.[4] In his statement of questions, Appellant presents the following issues for our consideration:

1. Did the PCRA court err in failing to hold an evidentiary hearing on [Appellant's] post-conviction claim of trial counsel[']s ineffectiveness.

---

[3] This Court *sua sponte* consolidated the appeals.

[4] Both the Commonwealth and the PCRA court aver that Appellant's claims are waived for failing to include them with sufficient detail in his Rule 1925(b) statement. However, since Appellant's Rule 1925(b) statement was filed at the quashed appeal and the PCRA court did not order Appellant to file a concise statement as part of the instant appeal, we decline to find waiver on this basis. That being said, our leniency is not boundless. *See Commonwealth v. Adams*, 882 A.2d 496, 498 (Pa.Super. 2005) ("Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant." (cleaned up)).

- 8 -

2. Did PCRA court err in accepting PCRA counsel's "no-merit letter."

3. Did PCRA counsel err in failing to investigate and amend the PCRA petition pursuant to Rule 905(a)(b).

Appellant's brief at 2. However, in the argument section of his brief he presents eleven issues and neglects to present any argument specific to the issues raised in his statement of questions. *See id*. at 8 (summary of argument, which includes two sentences baldly asserting error as to the lack of an evidentiary hearing and the adequacy of the no-merit letter). This Court will not develop Appellant's arguments for him. *See Commonwealth v. Johnson*, 985 A.2d 915, 925 (Pa. 2009). Accordingly, his claims that the PCRA court erred in accepting counsel's *Turner/Finley* letter and in dismissing his petition without a hearing are waived. *See Johnson*, *supra* at 925 (finding issues waived where the brief lacked any development of the claims in the argument section and did not cite to any authority).

We now turn to the eleven issues raised in the argument section of his brief. He raises two claims of trial court error. *See* Appellant's brief at 12-14 (claiming the trial court abused its discretion in not allowing Appellant's expert witness to testify at trial that "Appellant was in a state of delirium" and therefore unable to form the specific intent necessary for the assaultive and disarming crimes at the Hospital and Escape Dockets), and at 28-29 (claiming the trial court abused its discretion in denying Attorney Agrafiotis's pre-trial request for a continuance to prepare for trial and PCRA counsel was ineffective

for failing to raise this PCRA claim). Since Appellant could have raised these claims on direct appeal but failed to do so, they are waived. *See Commonwealth v. Lambert*, 797 A.2d 232, 240 (Pa. 2001); 42 Pa.C.S. § 9544(b) ("[A]n issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding.").

We next turn to Appellant's remaining issues, which are couched within PCRA counsel's purported ineffectiveness for failing to raise specific claims in an amended PCRA petition. We consider these mindful of the following. "Our standard of review of a PCRA court's dismissal of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the record evidence and free of legal error." *Commonwealth v. Whitehawk*, 146 A.3d 266, 269 (Pa.Super. 2016) (cleaned up). Counsel is presumed to be effective and the petitioner bears the burden of proving otherwise. *Commonwealth v. Johnson*, 236 A.3d 63, 68 (Pa.Super. 2020) (*en banc*) (citation omitted). To do so, he must establish the following three elements:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different.

*Id*. (citations omitted). Failure to prove any of the three elements will result in dismissal of the ineffectiveness claim. *Id*. (citation omitted).

Most of Appellant's claims aver that PCRA counsel was ineffective for failing to raise claims as to the ineffectiveness of appellate and/or trial counsel. "In determining a layered claim of ineffectiveness, the critical inquiry is whether the first attorney that the defendant asserts was ineffective did, in fact, render ineffective assistance of counsel. If that attorney was effective, then subsequent counsel cannot be deemed ineffective for failing to raise the underlying issue." *Commonwealth v. Burkett*, 5 A.3d 1260, 1270 (Pa.Super. 2010).

As a first-time PCRA petitioner, Appellant "enjoys a well-recognized right to legal representation during this initial collateral review of his judgment of sentence. In this context, the right to counsel conferred on initial PCRA review means an enforceable right to the effective assistance of counsel." *Commonwealth v. Betts*, 240 A.3d 616, 621 (Pa.Super. 2020) (cleaned up). As a means of enforcing this right, our Supreme Court has clarified that "a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to do so, even if on appeal." *Commonwealth v. Bradley*, 261 A.3d 381, 401 (Pa. 2021) (cleaned up). In these scenarios, Pa.R.A.P. 302(a) waiver does not apply. *Id*. at 405. Our Supreme Court outlined the following procedure for appellate courts to follow in reviewing claims of ineffective assistance of PCRA counsel raised for the first time on appeal from the dismissal of a PCRA petition:

In some instances, the record before the appellate court will be sufficient to allow for disposition of any newly-raised ineffectiveness claims. However, in other cases, the appellate court may need to remand to the PCRA court for further development of the record and for the PCRA court to consider such claims as an initial matter. Consistent with our prior case law, to advance a request for remand, a petition would be required to provide more than mere boilerplate assertions of PCRA counsel's ineffectiveness; however, where there are material facts at issue concerning claims challenging counsel's stewardship and relief is not plainly unavailable as a matter of law, the remand should be afforded.

*Id*. at 402 (cleaned up).

In other words, "appellate courts will have the ability to grant or deny relief on straightforward claims, as well as the power to remand to the PCRA court for the development of the record." *Id*. at 403. Thus, our Supreme Court reaffirmed the preference for evidentiary hearings and the "general rule" that "a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion." *Commonwealth v. Colavita*, 993 A.2d 874, 895 (Pa. 2010), *overruled on other grounds by Bradley, supra*. Moreover, the appropriate forum for the development of an evidentiary record on PCRA claims is the PCRA court as the appellate courts do not serve as fact-finding courts. *See Commonwealth v. Shaw*, 247 A.3d 1008, 1017 (Pa. 2021).

Here, Appellant's claims pertaining to PCRA counsel's stewardship can be summarized as follows:

1.  Trial, appellate, and PCRA counsel failed to raise the claim that his convictions for assault by a prisoner and attempted escape should be reversed because the arrest warrant for the Theft Docket was illegal. *See* Appellant's brief at 9-10.

- 12 -

2.    PCRA counsel should have raised trial counsel's ineffectiveness for failing to argue that the evidence was insufficient for assault by a prisoner because Appellant did not meet the definition of a prisoner. *Id*. at 11.

3.    PCRA counsel failed to raise a legality of sentencing issue based upon the argument that Appellant was convicted of assault by a prisoner and attempted aggravated assault for the same conduct of stabbing Constable Fronzaglio, and his conviction for escape was impossible because he was handcuffed and shackled and never attempted to escape. *Id*. at 15.

4.    PCRA counsel failed to raise trial counsel's ineffectiveness for not objecting to a violation of the six-hour arraignment rule at each docket.  Appellant claims prejudice because his pre-arraignment statements were used against him at trial. *Id*. at 16-17.

5.    PCRA counsel failed to raise the ineffective assistance of Attorney Puskar for misadvising Appellant about a plea offer. *Id*. at 18-19.

6.    PCRA counsel failed to raise the ineffectiveness of Attorneys Puskar and Agrafiotis for failing to move for suppression of Appellant's statements given at the hospital without *Miranda* warnings, and Attorney Agrafiotis for failing to attack the reliability and voluntariness of the statements at trial.  *Id*. at 20-24.

7.    PCRA counsel failed to present Appellant's claim that Attorneys Puskar and Agrafiotis did not properly argue for admission of expert witness testimony at trial regarding Appellant's mental illness and the effect of the drugs ingested voluntarily by Appellant and administered to Appellant during his stay at the hospital, insofar as they related to Appellant's state of mind and involuntary intoxication as a defense.  *Id*. at 25-27.

8.    PCRA counsel failed to argue that several officers of the court obstructed the administration of justice from the time of the preliminary hearing to the instant PCRA proceedings,

due in large part to the absence of requested transcripts. *Id*. at 30-32.

9.    PCRA counsel failed to present Appellant's claim that he was prejudiced by the violation of the sequestration order. With regard to the underlying substance of the violation, Appellant contends that the transcript has been modified to conceal the violation. *Id*. at 33-35.

Upon review of the certified record, we are satisfied that Appellant raised PCRA counsel's ineffectiveness at the earliest opportunity. Indeed, Appellant first raised PCRA counsel's ineffectiveness in response to the PCRA court's Rule 907 notice. In the order denying Appellant's petition for an extension of time to file a notice of appeal, the PCRA court stated that it reviewed Appellant's response prior to dismissing his PCRA petition. *See* PCRA Court Order, 8/13/20, at unnumbered 1. However, our review of the certified record does not evince that the PCRA court considered Appellant's properly-raised claims of PCRA counsel's ineffectiveness prior to dismissing the PCRA petition. In fact, we observe that the dismissal order, which was filed three hours after Appellant's response, does not reference Appellant's response or his assertion that PCRA counsel rendered ineffective assistance.

Appellant has raised more than mere boilerplate assertions but has not had the opportunity to develop the claims outside of the *pro se* argument in his brief. *See Bradley*, *supra*, at 402. As "relief is not plainly unavailable as a matter of law," we conclude that "remand should be afforded" with respect to these claims. *Id*. Accordingly, we vacate the order dismissing Appellant's PCRA petition and remand for the appointment of counsel to assist

Appellant in litigating his ineffective assistance of counsel claims pertaining to PCRA counsel. Newly-appointed counsel shall file a brief discussing those claims within a reasonable time frame. **See Betts**, **supra** at 625. "Thereafter, the PCRA court shall have the discretion to proceed as it deems fit under Pennsylvania law and the Pennsylvania Rules of Criminal Procedure," including granting new counsel the opportunity to file an amended petition on Appellant's behalf, holding an evidentiary hearing, or issuing notice of its intent to dismiss the petition without a hearing. **Id**.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/28/2023