J-A23024-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JONATHAN THOMAS BARON | : | |
| | : | |
| Appellant | : | No. 354 WDA 2025 |

Appeal from the Judgment of Sentence Entered February 25, 2025
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-SA-0000224-2024

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: December 16, 2025**

Jonathan Thomas Baron appeals from the judgment of sentence entered following his conviction for harassment. 18 Pa.C.S.A. § 2709(a)(3). He challenges the sufficiency of the evidence, evidentiary rulings, and the effectiveness of trial counsel. We affirm.

Following an incident in the parking lot of Live! Casino, Baron received a citation alleging he harassed Holly Blazowich ("the victim"):

> Nature of Offense; IN THAT, on or about said date, THE DEFENDANT, with intent to harass, annoy or alarm another person, namely [t]he Victim, did engage in a course of conduct or repeatedly committed acts, namely, including but not limited to, wait for the Victim outside her work, and watch her from a distance as she walked to her car, which did alarm or seriously annoy such other person and which served no legitimate purpose, in violation of Section 2709(a)(3) of the PA Crimes Code.
>
> To Wit, With the intent to harass and alarm, the Defendant did conduct various concerning acts which did annoy and alarm the Victim, which served no legitimate purpose.

Non-Traffic Citation/Summons, filed Sept. 3, 2024 ("Citation").

The trial court set forth the following factual and procedural history:

> The instant case arises out of an incident on June 8, 2024, where [Baron] conducted various concerning acts which did annoy and alarm the victim. Following an investigation, [the Citation] was filed on September 3, 2024, charging [Baron] with [h]arassment, in violation of 18 Pa.C.S.A. § 2709(a)(3). On February 25, 2025, [Baron] proceeded to a tr[ia] before th[e c]ourt. . . .
>
> During the [s]ummary [a]ppeal trial, the victim testified that on June 8, 2024, she was working at the Live Casino (Hereinafter, "casino") as a bar tender. She completed her shift and left work at approximately 2:50 am. The victim parked her car in a spot located close to the casino, although not within the normal employee parking. As she approached her vehicle, she noticed a man standing beneath a light pole, which was odd to her since she had been employed there for 3 years and never noticed anything like that before. She hurried to her car and then the man walked away. As she drove away, she saw the man jump over the guardrail. Then, "he smiled real big at me and I took it as, like, intimidating." [N.T., Feb. 25, 2025, at 8.]
>
> She recognized [Baron] as she had her first encounter with him in the year 2021, when she was working at Callaghan's in Greensburg. He came into that establishment several times and eventually asked the victim on a date. When she declined, [Baron] became "unruly" and "odd" which caused the victim ongoing concern. [**Id.** at 9.] The victim stated that thereafter, [Baron's] unwanted behavior continued and "it has not stopped." [**Id.** at 10.] He continued to come to her work, so she informed him she would no longer serve him. She spoke to her employer at Callahan's who asked [Baron] not to come there when the victim was working. Even when told not to do so, [Baron] continued to come to the victim's place of work. [Baron] repeatedly asked the victim's employer at Callaghan's to be able to come and for the victim to serve him, so the employer relented and requested she serve [Baron]. One night, [Baron] was mugged and robbed leaving Callaghan's and he alleged that the victim had him "jumped." Because

of [Baron's] allegations against the victim, her employer no longer asked her to serve [Baron]. The victim also recounted an incident at Callaghan's where [Baron] pulled up her social media account which bothered her since she told him she did not have one because she wanted to maintain her privacy.

[Baron], next, began to bother her at the Casino. She described [Baron's] behavior as coming to her work and disturbing her, trying to get her fired, and trying to belittle her. The victim denied ever having a dating relationship with [Baron] or of having mutual friends with [Baron].

After the incident at the casino on June 8, 2024, the victim contacted the police because she:

> ... was really scared. Because prior to that incident, there was an incident at a bar. I was sit — I just got done taking a nursing exam. I went there to unwind for one drink. I was there by myself for one drink. And he comes — Jonathan Baron comes into the bar, loudly broadcasting he's moving to Denver, and I started to put my hoodie on, hurry up and drink my drink because I try to avoid situations with this man.
>
> So, that being said, he went behind the bar, touched the bartender, and long story short, he got forcefully removed from the bar. From that incident on, he told everyone that I had him jumped.

[*Id.* at 13.] The victim felt that the situation was escalating because [Baron] was blaming her for things she did not do and then was standing outside in the parking lot.

The victim was advised by her employer that she could not obtain the security footage unless she went to the Pennsylvania State Police. So, she decided to press charges against [Baron]. It was her understanding that [Baron] was barred from coming to her place of employment for at least the weekend. She called off work the next weekend because she was scared. Thereafter, the victim testified that not only did [Baron] continually came to her place of employment, but "he was asking my security, the security that's supposed to protect the workers, to escort him up to where I was working." [*Id.* at 16.]

Jordan Beaken, who was working at the casino as a security supervisor on June 8, 2024, testified that after the victim reported the incident in the parking lot, the security director suggested they give [Baron] an eviction notice until they could complete an investigation. [Baron] was given an eviction letter informing him that he should not come to the casino for seven days. The next day on June 9, 2024, Ms. Beaken reviewed the security footage and from what she saw, she determined that [Baron]: "did not even know that [the victim] was in the parking lot." [*Id.* at 29.] She went on to say that [Baron] appeared to be talking on his cell phone with his back to the employee exit and she did not believe that he knew the victim was walking out for the evening. Ms. Beaken did clarify; however, "that the victim did drive past [Baron. S]o, she may have seen him that way, and he did go over the guardrail, and that's when we lost footage." [*Id.* at 30.] Later that day, [Baron] contacted Ms. Beaken and was informed that the casino did not believe there was any incident. She apologized for the eviction letter and gave [Baron] free play and comps along with permission to return to the casino. [Baron] did return that day and spoke directly to Ms. Beaken. While speaking together, [Baron] told her that he had prior issues with the victim and he "seemed really paranoid." [*Id.* at 31.] [Baron] reported being afraid he would end up dead over this incident. [Baron] continued to come to the casino and talk with Ms. Beaken about his prior history with the victim, which made Ms. Beaken feel "a little uncomfortable." [*Id.*]

Joseph Churner, Pennsylvania State Trooper, testified that after conducting an investigation that included having discussions with the victim and casino staff, he felt there was sufficient evidence to file criminal charges against [Baron]. He did explain that even though casino security staff did not observe any incident on their recorded footage, the video would not have contained footage of the end of the incident because it was not within range and he noted that the video could never depict the history between victim and [Baron]. [T]herefore, observing the video was not relevant.

[Baron] elected to testify. He described his interactions with the victim at Callahan's bar in 2021. From his perspective, there were no serious interactions, but admitted that she did ask him not to come to the bar, which

he said he obliged. In February 2022, he stated that after the victim had served him, he did not give her a $150.00 tip as he had promised. He believed that he was assaulted when he left the bar because the victim was angry and the assault was at her direction. He called 911 but "they did not believe me[" and] he was arrested for public intoxication. [*Id.* at 48.] According to [Baron], because he was later able to obtain video footage of the assault, his criminal charges were dropped. After the assault, [Baron] said he never returned to Callahan's.

[Baron] testified that he began going to the casino bar long before the victim started working there and he never had any issues. On the night of the incident, [Baron] said he left the casino and walked the way he always did, down the same path that he always took to get to his house. He denied ever seeing the victim that night and had been confused when he received the eviction letter.

No other witnesses testified on behalf of [Baron].

Trial Ct. Op., filed Apr. 21, 2025, at 1-5 (some citations omitted). The court found Baron guilty of harassment. It sentenced him to pay a fine of $200. Baron filed a timely appeal.

Baron raises the following issues:

I. Did the Commonwealth present sufficient evidence proving Mr. Baron's guilt beyond a reasonable doubt of Harassment, 18 Pa C.S. § 2709(a)(3), specifically as to the intent to harass, annoy, or alarm, and the existence of a course of conduct and/or repeated acts which served no legitimate purpose?

II. Was the verdict against the weight of the evidence, specifically the testimony of Jordan Beaken, who testified that she found no evidence of wrongdoing through her investigation?

III. Did the trial court err in admitting testimony concerning Mr. Baron's alleged past conduct, over his timely objection, because the evidence pertained to events not addressed in the underlying Non-Traffic Citation?

IV. Did the trial court err in admitting testimony from Trooper Joseph Churner regarding the contents of video evidence which he did not review?

V. Did the trial court err in denying Mr. Baron's oral motion to dismiss in reliance on testimony regarding conduct not addressed in the underlying Non-Traffic Citation?

VI. Was Mr. Baron's trial counsel ineffective for failure to obtain a copy of video evidence, despite its exculpatory value, failure to move for admission of the video evidence, and/or failure to compel the Commonwealth to introduce the video evidence pursuant to Pa.R.E. 1002?

Baron's Br. at 5.

In his first issue, Baron claims the Commonwealth did not present sufficient evidence to establish that he acted with an intent to harass, annoy, or alarm the victim or that he engaged in a course of conduct that served no legitimate purpose. He argues that he had no "verbal communication whatsoever with [the victim] on the incident date, and Ms. Beaken credibly testified that, after reviewing the video, Mr. Baron had his back turned to [the victim] in the Casino parking lot and appeared to be unaware of her presence." *Id.* at 16. He claims that the victim's testimony that Baron "smiled real big," which she construed as an act of intimidation, and her belief that Baron was motivated by prior incidents, "rests upon her perspective and feelings about a seemingly innocuous situation," which courts have held to be insufficient evidence of *mens rea*. *Id.* at 16-17.

Baron further argues that the language used in the charging document evidenced that it was based on the victim's subjective beliefs. He claims that the document's statement that Baron waited outside and watched the victim

from a distance was "directly refuted by the video, per Ms. Beaken's testimony." *Id.* at 17. He claims Ms. Beaken's testimony supports Baron's testimony that he went to take a phone call from a co-worker and then went home, without seeing the victim.

Baron further claims the Commonwealth failed to establish a course of conduct that served no legitimate purpose. He states that the Citation "is specific to the events of June 8, 2024," and, even accepting the victim's testimony as true, the conduct "amounted to nothing more than a minor annoyance rather than a pattern of behavior." *Id.* at 18. He claims the evidence does not establish a continuity of purpose.

When reviewing the sufficiency of the evidence, we must determine "whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Miller*, 217 A.3d 1254, 1256 (Pa.Super. 2019) (citation omitted). We review the sufficiency of the evidence *de novo*, as it presents a question of law. *Commonwealth v. Hall*, 199 A.3d 954, 960 (Pa.Super. 2018).

The subsection of the harassment statute under which Baron was convicted states, "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person . . . engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose[.]" 18 Pa.C.S.A. § 2709(a)(3). The statute defines "[c]ourse of conduct" as

> A pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes lewd, lascivious, threatening or obscene words, language, drawings, caricatures or actions, either in person or anonymously. . . .

*Id.* at § 2709(f). The defendant's intent to harass "may be inferred from the totality of the circumstances." ***Commonwealth v. Lutes***, 793 A.2d 949, 961 (Pa.Super. 2002).

The trial court found the evidence sufficient to support the harassment conviction:

> This [c]ourt, having reviewed the entire record in this case and viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, finds that the Commonwealth has presented sufficient evidence to find [Baron] guilty of Harassment. The Commonwealth presented evidence that [Baron] engaged in a course of conduct over several years, including the offense on June 8, 2024, where his behavior intimidated the victim; caused her to have ongoing concern; disturbed her at work; pulled up her private social media account which made her uncomfortable; exhibited behavior that scared her and that [Baron's] behavior was escalating.

Trial Ct. Op. at 6-7. We agree. The testimony established that Baron engaged in a course of conduct, including appearing at her various places of work and retrieving her social media accounts, in an effort to annoy, harass, or alarm her. The totality of the circumstances establishes he acted with the requisite intent.

Baron next claims the verdict is against the weight of the evidence. He maintains the victim's testimony proves she perceived Baron's alleged conduct as nefarious based on past incidents that were beyond the scope of the

J-A23024-25

Citation. He argues the verdict ignores the innocuous nature of the events identified in the Citation and Beaken's testimony that the video did not support the accusations. He notes Beaken was the only witness who watched the video. He states the Citation does not mention a menacing smile or reference acts committed prior to the incident date. He claims the court found him guilty based on uncharged conduct.

We review a trial court's denial or grant of a weight claim for an abuse of discretion. *See Commonwealth v. Martin*, 323 A.3d 807, 823 (Pa.Super. 2024) (per curiam). When a trial court reviews a challenge to the weight of the evidence, it must determine whether "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.* (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000)). "A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion." *Id.* (quoting *Widmer*, 744 A.2d at 752). The trier of fact is free to believe all, part, or none of the evidence and determine the credibility of witnesses. *See Commonwealth v. James*, 268 A.3d 461, 468 (Pa.Super. 2021).

The trial court concluded the verdict was not against the weight of the evidence:

> Commonwealth witness, Jordan Beaken (security employee of the casino) testified that after she reviewed the security footage following the victim's report of the incident on June 8, 2024, she believed that [Baron] would have been unaware of the victim leaving the casino due to his back

- 9 -

> facing the employee entrance/exit and his talking on his cell phone. However, Ms. Beaken clearly testified that when the victim drove away, their security footage dropped and would not have captured the alleged interaction between the victim and [Baron].

Trial Ct. Op. at 7 (citation omitted).

The court did not abuse its discretion when it found the verdict was not against the weight of the evidence. As noted by the trial court, although Beaken testified that it appeared from the video that Baron was unaware that the victim was in the parking lot, she also testified that the video would not have captured the interaction between Baron and the victim as the victim drove away because Baron was out of range of the camera after he jumped the guardrail.

In his third issue, Baron argues the court erred in admitting testimony about his past conduct because such allegations were beyond the scope of the Citation and irrelevant to the offense. He claims a citation must contain "the date and time when the offense is alleged to have been committed," "the place where the offense is alleged to have been committed," and "a summary of the facts sufficient to advise the defendant of the nature of the offense charged." Baron's Br. at 22 (quoting Pa.R.Crim.P. 403). He claims that where evidence goes beyond the scope of conduct set forth in the citation, the discrepancy is fatal if the defendant was not provided sufficient notice of the facts underlying the charged offense. He further points out that irrelevant evidence is inadmissible. Baron claims that by admitting evidence from prior dates the court ignored that the Citation has a specific date and did not reference any

allegations prior to that date. He points out that the Citation could have included a date range. He argues the Citation did not provide him with notice that the offense included acts that occurred prior to the incident date.

The admission of evidence is within the discretion of the trial court and will only be reversed where there is an abuse of that discretion. **Commonwealth v. Radecki**, 180 A.3d 441, 451 (Pa.Super. 2018). An abuse of discretion exists where the court overrides or misapplies the law or exercises judgment in a way "that is manifestly unreasonable, or the result of bias, prejudice, ill will or partiality, as shown by the evidence of record." **Id.** (citation omitted).

Every citation shall include certain information, including the date and place of the offense and the statute allegedly violated:

(A) Every citation shall contain:

. . .

(4) the date and time when the offense is alleged to have been committed, provided however, if the day of the week is an essential element of the offense charged, such day must be specifically set forth;

(5) the place where the offense is alleged to have been committed;

(6) a citation of the specific section and subsection of the statute or ordinance allegedly violated, together with a summary of the facts sufficient to advise the defendant of the nature of the offense charged. . . .

Pa.R.Crim.P. 403. "[A] purported variance [from the charging document] will not be deemed fatal 'unless it could mislead the defendant at trial, involves

- 11 -

an element of surprise prejudicial to the defendant's efforts to prepare his defense, precludes the defendant from anticipating the prosecution's proof, or impairs a substantial right.'" ***Commonwealth v. Jones***, 912 A.2d 268, 289 (Pa. 2006) (citation omitted).

The trial court concluded the scope of the citation included the past conduct:

> The [c]ourt disagrees with [Baron] that the [C]itation limited the events to only those that occurred at the casino. In fact, the [C]itation specifically states that [Baron], with the intent to harass, annoy or alarm the victim engaged in a course of conduct or repeatedly committed certain acts alleged in the [C]itation, but not limited to those acts. The [c]ourt finding no merit with this argument permitted the victim to testify about [Baron's] course of conduct over the past several years.

Trial Ct. Op. at 8.

We conclude the court did not abuse its discretion in admitting the evidence of past conduct. The Citation put Baron on notice that his past interactions with the victim were relevant to the charged crime in that it charged a course of conduct, stated the citation was not limited to the alleged acts, and stated that Baron "did conduct various concerning acts which did annoy and alarm the Victim, which served no legitimate purpose." ***See*** Citation.

Baron next claims the court erred in admitting hearsay testimony from Trooper Churner regarding the video recording from Live! Casino. He claims the testimony was hearsay and violated the best evidence rule. Baron argues that Trooper Churner did not view the video, but testified as to the contents,

including that the video did not contain the full interaction. He argues the court should have compelled admission of the video. Baron claims the court allowed the Commonwealth to present inadmissible hearsay testimony that was irrelevant, and that Ms. Beaken had already testified to the video's contents. He argues Trooper Churner discussed the scope of the video and speculated that the video was not dispositive.

Baron did not object at trial to Trooper Churner's testimony. N.T. at 36-39. He therefore waived the issue. We further point out that Trooper Churner's testimony about the video occurred on cross-examination. *Id.* at 40-41. In addition, he testified that the police had a physical copy of the video and he "would [have been] interested in [the video] if [they] were able to actually view it," but there were "issues with the download process." *Id.* at 42.

In his fifth issue, Baron maintains the court abused its discretion when it denied his motion to dismiss, which was based on the Commonwealth's use of allegedly inadmissible evidence regarding past conduct. He claims the court erred in finding the past conduct admissible to establish a course of conduct.

The trial court reasoned that "it was permissible for the Commonwealth to enter into evidence all of [Baron's] attempts to harass, annoy or alarm the victim and how he engaged in a course of conduct or repeatedly committed acts that served no legitimate purpose as the [C]itation did not limit[] evidence to only the events that occurred on June 8, 2024." Trial Ct. Op. at 10 (emphasis omitted). This was not error. As discussed above, the evidence of past acts was admissible

In his final issue, Baron claims his counsel was ineffective for failing to obtain a copy of the video, failing to introduce the video, and failing to move the trial court to compel the Commonwealth to introduce the video. He claims there was conflicting testimony regarding the video's contents and the video was a central part of the case. He argues his counsel had no reasonable basis to justify his failure to obtain the video and there was a reasonable probability the verdict would have been different had the video been admitted.

Because Baron was sentenced to a fine, with no incarceration, we will address his ineffective assistance of counsel claims on direct appeal. ***Commonwealth v. Delgros***, 183 A.3d 352, 362 (Pa. 2018) (holding exception to rule requiring deferral of ineffectiveness claims exists where defendant is ineligible to obtain subsequent PCRA review).

We review a court's decision as to an ineffectiveness claim to determine whether the record supports the court's findings and the decision is free of legal error. ***See Commonwealth v. Pitt***, 313 A.3d 287, 293 (Pa.Super. 2024). Counsel is presumed effective. ***Id.*** To overcome this presumption, a petitioner claiming ineffectiveness must show by a preponderance of the evidence that:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different.

*Id.* (quoting *Commonwealth v. Johnson*, 236 A.3d 63, 68 (Pa.Super. 2020) (*en banc*)).

For the prejudice prong, the petitioner must demonstrate "that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's ineffectiveness." *Commonwealth v. Chmiel*, 30 A.3d 1111, 1127-28 (Pa. 2011). "This does not mean a different outcome would have been more likely than not; a reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Commonwealth v. Jones*, 210 A.3d 1014, 1019 (Pa. 2019) (cleaned up).

The trial court concluded counsel was not ineffective, as the video evidence would not have altered the outcome of the case.

> [Baron] argues that counsel was ineffective for failing to obtain and enter into evidence a copy of the casino security footage, which [Baron] believes would be exculpatory in value based on the testimony of Ms. Beaken, and for counsel's failure to compel the Commonwealth to introduce the video. As discussed above, Ms. Beaken testified that, in her opinion, the security footage did not support a finding that [Baron] harassed the victim or that he even knew she had walked outside into the parking lot as his back was turned opposite of the exit and that he appeared to be on his cell phone. Regardless of the entry of the actual video or lack thereof, however, the [c]ourt heard that evidence; that from the perspective of casino security, [Baron] did not exhibit harassing behavior. With that being said[,] however, Ms. Beaken clearly stated that video stopped short of capturing the entirety of the exchange between the victim and [Baron] as the further interactions went beyond the scope of the video. Merely finding [Baron] guilty of harassment does not mean the [c]ourt found Ms. Beaken's testimony less than credible. Rather, the [c]ourt found her testimony to be credible and observing the security footage to confirm that [Baron] did not harass the victim at that time

- 15 -

is not relevant. The [c]ourt found the testimony of the victim credible that after she drove away, (out of the range of the camera) [Baron's] behavior was intimidating and scary combined with the past several years of annoying, harassing, and alarming behavior supporting a finding that the Commonwealth proved beyond a reasonable doubt the elements of the crime charged.

Trial Ct. Op. at 12-13 (emphasis and citations omitted).

The court did not abuse its discretion in denying the ineffectiveness claim. The court heard Beaken's testimony regarding the contents of the video and, based on that credible testimony, it concluded the introduction of the video would not have altered the outcome of the case, as it would not have contained video of the incident underlying the conduct at the casino, which occurred outside of the camera's frame, and would not have contained evidence of Baron's past interactions with the victim.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/16/2025